IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TRENCE ROBINSON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CITY OF ARKANSAS CITY, KANSAS,<br><br>　　　　Defendant. | Case No.: 10-cv-01431-JAR-GLR |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

COMES NOW Defendant City of Arkansas City, Kansas (the "City"), by and through its counsel of record, and responds as follows in opposition to Plaintiff's Motion to Compel Production of Documents and for Expenses (Doc. 103):

**INTRODUCTION**

As Plaintiff admits in the Introduction to his Memorandum in Support,

> If this motion could be stated in one sentence, it would be as follows: Robinson respectfully requests that [the] Court compel the City to search for and produce all documents: related to Robinson's employment with the City; related to Robinson's promotion to the position of Sanitation Foreman; related to Robinson's performance of the duties of the Foreman in the City's Sanitation Division; related to the City's Pay Classification Plan during the relevant time period; and related to Gary Baugher's efforts to re-write job descriptions for the supervisors in his department, including those that were given to Robinson, Randy Jacobs, Tony Tapia, and Charles Blass.

Plaintiff's sentence summarizes well the issues before the Court. Plaintiff has asked the City to read every one of the thousands upon thousands of documents in its possession and within its universe of electronic stored information, guessing which ones may conceivably contain some detail "relating to" extraordinarily broad topics. The City has done its best to satisfy Plaintiff's extraordinarily broad and burdensome demands. Indeed, the City has produced over 6,700 pages of documents responsive to Plaintiff's discovery requests. And defense counsel preserved the City's

computer hardware at the earliest possible moment and has personally searched the City's e-mails for the following search terms: (1) Paton; (2) Patton; (3) Reedy; (4) Jennings; (5) Foreman; (6) Grievance; (7) Robinson; (8) Sanitation; and (9) Trence.  As a result of its search, the City produced to Plaintiff 102 e-mails, 87 of which are in native format and identified hundreds of e-mails detailed on a privilege log which are the subject of another motion to compel Plaintiff has filed.  Plaintiff's counsel, to this day, has not suggested any additional search terms which defense counsel should utilize in conducting searches of the City's ESI.  And at the Rule 26(f) conference, Plaintiff's counsel never suggested that discovery in this single-plaintiff, failure to promote lawsuit would entail such an overarching and burdensome inquiry into the entirety of the City's ESI.  Plaintiff's motion to compel should be denied.

## STATEMENT OF FACTS

**I.      The Relevant Facts and Procedural History.**

The facts relevant to Plaintiff's motion to compel are as follows:

1. Plaintiff filed a grievance and KHRC Charge of Discrimination against the City in 2008.  [Exhibit A, Declaration of Galdean, ¶¶ 3, 4].

2. Realizing that litigation was imminent in light of these filings, on April 27, 2009, defense counsel instructed the City to transmit Gary Baugher's laptop computer and the City's hard-drives on which its e-mails were stored to a company called Digital Mountain to create mirror images of the information on such devices.  [Declaration of Galdean, ¶ 5].

3. In March 2011 at their Rule 26(f) conference, and consistent with the District of Kansas's Guidelines for Discovery of Electronically Stored Information, the parties discussed several aspects of discovery of electronically stored information.  The parties agreed that all electronically stored information – save two categories of it – would be produced in hard-copy or

in .pdf or .tif format. [Declaration of Galdean, ¶ 6]. Plaintiff's counsel subsequently requested electronically stored information in relation to only two categories of information: (1) information relating to the mediation panel that considered Plaintiff's December 2008 grievance, and (2) information relating to any similar job-related documents that Baugher gave to Plaintiff and other employees in 2007. [*Id.*].[1]

4. After the Rule 26(f) conference, defense counsel instructed Digital Mountain, for whom Calvin Weeks worked, to perform searches for such documents on a mirror image of Gary Baugher's laptop computer. [Declaration of Galdean, ¶ 7]. Plaintiff's Memorandum concedes that Digital Mountain's search was "perfectly reasonable" for this limited purpose. Doc. 104, p. 23 n. 8.

5. The City eventually designated Calvin Weeks as an expert witness for the purpose of describing metadata on particular MS WORD documents found on Baugher's laptop computer. *See* Weeks's Expert Report, Exhibit C to Doc. 104. Weeks conducted a limited search of Baugher's laptop computer for the *exclusive* purpose of locating relevant MS WORD-format job descriptions. *Id.*

6. Defense counsel searched a mirrored image of the City's e-mail files of Gary Baugher, Steve Archer, Marla McFarland, and Doug Russell. [Exhibit B, Declaration of Hertzler, ¶ 2]. In doing so, defense counsel utilized the following search terms: (1) Paton; (2) Patton; (3) Reedy; (4) Jennings; (5) Foreman; (6) Grievance; (7) Robinson; (8) Sanitation; and (9) Trence. [*Id.* at ¶ 3]. As a result of its search, the City's counsel produced 102 e-mails total, 87 of which are in native format. [*Id.* at ¶¶ 4, 5]. The January 5, 2009 and February 8, 2008 e-

---

[1] These categories of requested ESI are captured in the Court's Scheduling Order. Doc. 13.

mails referenced in Plaintiff's Memorandum were not returned by defense counsel's search. [*Id.* at ¶¶ 4, 5].

7.      Plaintiff's counsel, to this day, has not suggested any additional search terms which defense counsel should utilize in conducting searches of the City's ESI. [Doc. 105-1, "Declaration of Galdean", ¶ 5].

## II. The Majority of Plaintiff's Memorandum Consists of Irrelevant Facts and Arguments.

Plaintiff's Memorandum in Support sets forth a number of facts describing discovery disputes over the course of the last five months which have absolutely nothing to do with the matter before the Court.  Consequently, for the second time in less than a month Plaintiff has exceeded the Court's page limitations[2] not because the analysis called for it, but rather because he has set forth every perceived, peripheral discovery grievance he could muster arising out of five months' worth of discovery.  Plaintiffs' insertion of entirely irrelevant matters into his most recent Memorandum literally leaves the undersigned wondering what Plaintiff seeks to compel. For instance, Plaintiff spends pages 5 and 6 of this Brief reporting that the City did not produce ESI with its initial discovery requests back in May 2011.  Plaintiff's Memorandum is very careful neither to tell the Court that the City *ultimately produced* the ESI which Plaintiff references, nor to engage in outright dishonesty by stating that it was never produced. (For instance, "The City did not at that time produce . . . ," and "When the City responded . . . it did

---

[2] Plaintiff will undoubtedly respond that only the *argument and authorities* segment of a brief is limited to thirty pages.  He will argue that he successfully dodged the page limitation by styling 15 pages worth of inflammatory, irrelevant and undeserved attacks on defense counsel as "Discovery Background."  Of course, Plaintiff could have explained the *relevant* "discovery background" in a page or two.  Plaintiff can call the segments of his brief whatever he wishes, but it does not change the fact that, in reality, they constitute the type of argument which should count against the Court's page limitations.  If Plaintiff's conduct in writing at length to rehash long time-barred and irrelevant discovery disputes were isolated, this point would not be worth quibbling about.

not produce . . ."). Indeed, it is unclear why Plaintiff is taking issue now (in September) with the City's failure to produce something on May 11 which was ultimately produced to Plaintiff on May 20 (*see* Doc. 104, p. 8 ("On May 20, 2011 . . . the City produced . . .")). The procedural history detailed in Plaintiff's Memorandum in Support is entirely irrelevant to the matter before the Court.

On page 7, continuing onto page 8, Plaintiff's Memorandum springs into an entirely peripheral dispute over transcripts of depositions taken in the *Bartlett v. Arkansas City* case. As Plaintiff's Memorandum admits, Plaintiff believed the transcripts should have been produced on May 11, 2011, and counsel discussed them during a telephone conference on May 17, 2011. Plaintiff is time-barred from moving to compel the transcripts, and they are entirely irrelevant to the present motion to compel. Responding, although it shouldn't have to, the City states that defense counsel was concerned about a protective order entered in the *Bartlett* case which potentially prohibited disclosure of the *Bartlett* deposition transcripts to Plaintiff. Furthermore, defense counsel wishes to review the *Bartlett* deposition transcripts to determine whether any redactions need to be made before they are produced in the present case.

Pages 39 through 44 of Plaintiff's Memorandum address a 30(b)(6) deposition which occurred on June 9, 2011. Plaintiff's motion to compel – filed three months later after the close of discovery on September 8, 2011 – includes an untimely request to reopen the 30(b)(6) deposition because Plaintiff believes the City's testimony regarding what *it* did to search for ESI in this lawsuit was insufficient. Plaintiff's request is untimely. Plaintiff should not be permitted, through his utter failure to follow this Court's Local Rules, to burden defense counsel with preparing a 30(b)(6) witness and defending a deposition at a time when defense counsel *should be* writing dispositive motions and preparing for trial.

## ARGUMENT AND AUTHORITIES

As Plaintiff points out in his Memorandum in Support, the City has produced over 6,700 pages of documents in this failure to promote employment case. But Plaintiff criticizes the City for producing "less than 350 pages of documents, including ESI, for which it would have had to actively search." Doc. 104, p. 17. Plaintiff misunderstands the City's duties under the Federal Rules. A Plaintiff's utilization of omnibus terms such as "relating to" and "regarding," when qualifying an *unlimited* range of documents and materials, "requires the respondent either to guess or move through mental gymnastics to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request." *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.,* No. 94-2395-GTV, 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995). Finding such a requirement unduly burdensome, *Audiotext* did not require the responding party to manually review each and every document in its possession. *Id.* Because Plaintiff's discovery requests are grossly overbroad, his motion to compel should be denied in its entirety.

Plaintiff readily admits that the City has "located and produced" documents when Plaintiff's discovery requests "identified specific paper documents." Doc. 104, p. 20. As to all else, Plaintiff has provided the City absolutely no meaningful guidance through narrowly tailored discovery requests into what he believed the City *should be* searching through. Consequently, Plaintiff is hardly in a position to criticize the City's efforts to search for and produce relevant documents. But as will be explained, the City's efforts to search for documents relevant to this lawsuit were more than adequate.

I.      **The City Has Reviewed Its ESI and Has Produced E-Mails In Native Format.**

Plaintiff is simply incorrect in his repeated contention that Digital Mountain is the only entity which searched the City's ESI for relevant documents.[3]  Rather, <u>defense counsel</u> searched the City's ESI to locate and produce all responsive ESI.  [Declaration of Hertzler, ¶ 5].  Defense counsel searched the City's e-mails, utilizing the following search terms: (1) Paton; (2) Patton; (3) Reedy; (4) Jennings; (5) Foreman; (6) Grievance; (7) Robinson; (8) Sanitation; and (9) Trence.  [*Id.* at ¶ 3].  In doing so, defense counsel searched the e-mail files of Baugher, Russell, Archer, and McFarland.  [*Id.* at ¶ 2].  As a result of its search, the City's counsel produced 102 e-mails total, 87 of which are in native format.  [*Id.* at ¶¶ 4, 5].  Plaintiff's counsel, to this day, has not suggested any additional search terms which defense counsel should utilize in conducting searches of the City's ESI.  [Declaration of Galdean, ¶ 5].  As for the January 5, 2009 and February 8, 2008 e-mails referenced in Plaintiff's Memorandum, they were not returned by defense counsel's search.  [Declaration of Hertzler, ¶¶ 4, 5].  But that fact does not render defense counsel's search unreasonable, particularly considering that Plaintiff has yet to propose any search terms which might yield additional relevant documents.

II.     **The City Has Provided Adequate Responses to the Specific Discovery Requests At Issue.**

On pages 33 through 39 of his Memorandum in Support, Plaintiff implies that the City has produced nothing in response to Plaintiff's initial discovery requests.  In reality, and as Plaintiff's Memorandum points out, Defendant has produced over 6,700 responsive documents.  While Plaintiff takes issue with certain objections tendered by the City, his Memorandum in Support does not set forth a single document which Plaintiff believes Defendant should have but failed to produce, apart from two e-mails not revealed in the City's ESI search.

---

[3]     As explained in ¶ 4 of the Statement of Facts, *supra.,* Digital Mountain's search was extraordinarily limited.

**III.      Plaintiff's Proposed "Remedies" Underscore the Objectionable Nature of His Discovery Requests. The City Should Not Be Compelled To Produce Its Hard-Drive, the Baugher Laptop Computer, Or Mirror Images Of Them.**

In terms of a "remedy," Plaintiff proposes that the City "investigate whether there are any repositories of paper documents that should have been reviewed for production." The City has already conducted such an investigation. And it is telling that Plaintiff proposes no "repositories" which the City has failed to search. But, here again, Plaintiff cannot ask the City to search every document in its possession for documents "relating to" or "regarding" particular topics, and then be upset by the City's selection of the most relevant "repositories." *See Audiotext,* 1995 WL 18759, at *1. It is not incumbent upon the City to appropriately narrow Plaintiff's discovery requests for him.

Furthermore, the City has already searched – utilizing the search terms detailed in Section I of this Response – the City's e-mail files relating to Russell and Archer. Plaintiff utterly fails to explain the relevance of e-mails of other foremen who were Plaintiff's peers (Tapia and Jacobs) or of Mary Bartlett. These individuals had nothing to do with any of the alleged adverse actions at issue in this case, and Plaintiff certainly has not demonstrated such.[4]

Plaintiff's Memorandum in Opposition also seeks to compel production of mirror images of the City's hard-drive and the Baugher laptop. Plaintiff offers no justification for a belief that the City's search efforts have been insufficient, other than to contend that the search did not reveal two specific e-mails which Plaintiff has evidently received from third-parties. But the fact that the City's search efforts did not reveal two documents does not mean that they were unreasonable. The City utilized reasonable search terms to discover e-mails relevant to this lawsuit, and Plaintiff has certainly never provided any additional proposed search terms which he

---

[4]    Should Plaintiff attempt (for the first time) to explain the relevance of these individuals' e-mails in his Reply brief, the City will have no opportunity to respond. The City would ask the Court to either disregard such new arguments, or to grant the City leave to file a surreply.

believes may uncover additional information. The fact that the City's search did not reveal two e-mails which Plaintiff believes are relevant does not render such search insufficient. Again, the City's counsel finds no authority for the proposition that a defendant is required to read every document in its possession searching for potentially relevant documents. *In re Urethane Antitrust Litig.*, 261 F.R.D. at 576; *Johnson,* 238 F.R.D. at 658.

The advisory committee notes to the 2006 amendment to Rule 34(a) suggest that direct inspection of an opponent's hard drive is anything but routine:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

And presumably applying the rationale of the advisory committee notes, the Tenth Circuit has called a request for a physical inspection of the opposing party's computer hard drives a "drastic discovery measure." *McCurdy Group v. American Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001). Certainly, merely requiring a party to produce its physical hard-drives is not appropriate based upon a party's desire for additional electronic documents. *Genworth Financial Wealth Management, Inc. v. McMullan,* 267 F.R.D. 443, 447 (D. Conn. 2010) ("a party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests."). There is no basis for Plaintiff's request for a mirror image of the City's hard-drive or Baugher's laptop computer.

## CONCLUSION

For the foregoing reasons, Defendant City of Arkansas City, Kansas respectfully requests the Court deny Plaintiff's motion to compel.

Respectfully submitted,

**s/ Alan L. Rupe**
Alan L. Rupe                               #08914
Trinidad Galdean                       #22973
Jessica L. Garner                      #24178
KUTAK ROCK LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, Kansas 67206
Telephone (316) 609-7900
Facsimile (316) 630-8021
Alan.Rupe@kutakrock.com
Trinidad.Galdean@kutakrock.com
Jessica.Garner@kutakrock.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2011, I electronically filed the above and foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification of the filing to the following:

C. Edward Watson, II, #23386
Todd N. Tedesco, #15652
Foulston Siefkin
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
Telephone: 316.267.6371
Facsimile: 316.267.6345
cewatson@foulston.com
ttedesco@foulston.com

*Attorneys for Plaintiff*

                                              **s/ Alan L. Rupe**
                                              Alan L. Rupe                     #08914