**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| TRENCE ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-1431-JAR-GLR |
| | ) | |
| CITY OF ARKANSAS CITY, KANSAS | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION**
**TO COMPEL PRODUCTION OF DOCUMENTS AND FOR EXPENSES**

After three patient months trying to resolve the instant dispute by conferring with opposing counsel and deposing the City's Rule 30(b)(6) designee and its expert witness regarding the City's discovery efforts, Robinson moved this Court to compel the City to produce responsive paper and electronic documents. [Doc. 103.] He elaborated with painstaking detail the City's discovery misconduct, such as its refusal to search for responsive documents and its production of an unprepared Rule 30(b)(6) witness.[1] [Doc. 104.] The City does not deny any of

---

[1] While the City attacks Robinson's thorough recitation of the facts, its Response [Doc. 120] illustrates the necessity of such a detailed account. As explained below, the City's generalizations gloss over the City's discovery violations. The City derides Robinson's account as "inflammatory, irrelevant and undeserved," but it does not deny the truth of a single fact therein. The City's insinuation that Robinson narrowly avoided "outright dishonesty" when he accurately stated that the City produced no ESI in its May 11, 2011, response to discovery is nonsense. The City now admits that it not only had not produced but it had not even searched for responsive ESI as of May 11. [Galdean Decl., Doc. 118-1, ¶11]. And Robinson forthrightly disclosed the City's subsequent production of a smattering of ESI. [Doc. 104, p. 11]. While it is not surprising that the City and its counsel were uncomfortable seeing their discovery misconduct laid out with such clarity (after all, as they say, "the guilty take the truth to be hard"), the City cannot object to the facts, merely because those facts, not Robinson, make it look bad.

Robinson also notes that his factual summary is just that—a statement of facts. The City's conclusory claim that Robinson's Memorandum (or any other filing) "dodged" the Court's page limitation is unsupported by a single citation to any impermissible content and is baseless.

the salient facts; instead, it brazenly disclaims any obligation to search for and to produce responsive documents.  [*See* Doc. 120.]

## I.        THE CITY UNJUSTIFIABLY VIOLATED ITS DISCOVERY OBLIGATIONS.

The City did not fulfill its duty to locate and to produce responsive documents.  Its purported justifications for its omissions are wholly without merit.

### A.        ROBINSON SOUGHT THE PRODUCTION OF ALL RESPONSIVE ESI.

From the outset of this litigation, Robinson insisted on the production of all responsive documents—paper or electronic.  The Report of Parties' Planning Conference explained (1) that the parties intended to request and to produce ESI "in hard copy or static form (e.g., .pdf or .tif images)," and (2) that Robinson separately sought certain ESI in native format.  [Report of Parties' Planning Conference, ¶ 5(d), attached as Ex. A.]  The Scheduling Order likewise reflects that arrangement.  [Scheduling Order, Doc. 13, ¶ 2(d).]  Accordingly, Robinson served production requests for all responsive paper and electronic documents.  [*See* Plaintiff's First Request for Production, Definition No. 8, attached as Ex. B.]

Now the City somehow transforms Robinson's requests to produce certain native-format documents into a restriction on the production of all other ESI.  But Robinson expressly refuted that mistaken supposition many times.  [Tedesco Aff., attached as Ex. C]  The City's production of a few specifically requested native-format documents does not satisfy its duty to produce all responsive ESI.  Robinson should not be disadvantaged because he has attempted to comply with the rules of discovery and to require that the City produce only a few key, disputed documents in native format.  Robinson's request for certain native-format documents in no way limits the City's obligation to produce responsive information in other formats.

**B.   ROBINSON'S PRODUCTION REQUESTS ARE REASONABLE, AND THE CITY'S BOILERPLATE OBJECTIONS ARE MERITLESS.**

Robinson served reasonable production requests, well within the Federal Rules' liberal scope of discovery, and the City's boilerplate objections to them are meritless.  [*See* Doc. 104, pp. 28-39.]  The City, without referencing a single request for production or providing a single specific example of its potential burden, merely restates the legal standards for burdensomeness and concludes "Plaintiff's discovery requests are grossly overbroad."  [Doc. 120, p. 6.]  This does not satisfy the City's burden to establish the merit of its objection.

To the contrary, even the City's own legal authorities demonstrate the impropriety of its objections.  For example, in *In re Urethane Antitrust Litigation*, the court overruled defendants' undue burden and overbreadth arguments because, as in this case: (1) the defendants "provided only conclusory allegations and have not offered any detailed explanation, affidavit, or other evidence demonstrating that they will suffer undue burden and expense by complying with the discovery"; and (2) the plaintiff used "omnibus phrases," such as "regarding" or "relating to," only to modify "sufficiently specific types of information and documents," not to a "broad range of . . . large or general categories of information or documents."  261 F.R.D. 570, 575-76 (D. Kan. 2009) (quotation omitted).  And in *Johnson v. Kraft Foods North American, Inc.*, the court not only overruled a defendant's objections based on the use of omnibus phrases, it ordered the defendant to show cause why it should not be sanctioned for having refused to respond.  238 F.R.D. 648, 659, 663 (D. Kan. 2006).  The City could not have cited a more appropriate case!

**C.   THE CITY FAILED TO GATHER AND TO SEARCH APPROPRIATE REPOSITORIES FOR RESPONSIVE DOCUMENTS.**

The City's abbreviated account of its search for responsive documents is misleading to say the least, and it glosses over its exclusion of many sources of potentially responsive

documents.   And the legal positions the City advocates would turn a party's discovery obligations on their head.

The City falsely suggests that it produced over 6,700 pages of documents responsive to Plaintiff's "initial discovery requests," which are the only requests at issue in this case.   This calculated misstatement deliberately misrepresents what the City actually produced.   The City produced a grand total of only 771 pages of documents responsive to Robinson's First Request for Production.[2]   Nearly all of these documents were items Robinson specifically identified:   his personnel file (313 pages); City documents, such as budgets, ordinances, and handbooks (166 pages); and job descriptions or performance evaluations (194 pages).   *Only 98 pages* produced in response to Robinsons' First Request for Production (and *less than 350* of the total pages produced in response to all of Robinson's production requests and in the City's disclosures) are documents that the City would have found on its own by searching for responsive documents.[3] [*See* Numerical Summary of City's Document Production, attached as Ex. D.]

The City's paltry production flows from its inexcusable exclusion of key sources of potentially responsive electronic and paper documents.   First, the City summarizes the entire universe of electronic sources it searched in one sentence:   "Defense counsel searched a mirrored image of the City's e-mail files of Gary Baugher, Steve Archer, Marla McFarland, and Doug Russell." [Doc. 120, p. 6.]   As Robinson detailed in his opening memorandum [*e.g.*, Doc. 104,

---

[2] Approximately half of the City's total production (3,316 pages), including disclosures, consisted of personnel files Robinson requested in his Second Requests for Production, which are not at issue in this motion.   The rest of the documents were produced in the City's initial and supplemental disclosures.

[3] The court should not be misled by the number of documents for which the City disclosed in its Rule 26 disclosures.   The City only identified 313 pages of their disclosures as responsive to Robinson's requests for production.   Specifically, after the City disclosed 313 pages with its initial disclosures on March 21, 2011, it reproduced those exact same 313 pages in response to Robinson's First Requests for Production on May 11, 2011.   The City did not treat any of the other documents from its disclosures in this manner.

pp. 10-11], this statement is inaccurate and misleading.  The City did not provide its counsel all of these users' e-mail files; it provided only those e-mail files still stored on the City's network exchange server as of April 2011, as the City concedes.  [Hertzler Decl., Doc. 120-2, ¶2.]  So, for example, the e-mail files on the August 2008 backup of Baugher's laptop, the e-mail files on Baugher's pre-2009 laptop, the e-mail files on Baugher's post-2009 laptop, and the e-mail files on whatever local computers or other storage devices used by the other three users were never searched for responsive documents.  Second, the City made no effort to locate responsive paper documents beyond the files of a single employee, Marla McFarland.  [Doc. 104, p. 11; Metzinger Depo., Ex. E, at 72:7-16.]

The City pretends that, by searching four users' network e-mail files and one employee's paper files, it has searched every source of potentially responsive documents.  But, what about the four users' network file folders, which the City provided to its counsel for review, or the network files of other City employees? Or the local storage devices and paper files of any City employee, including Robinson's former supervisor, Baugher?[4]  At a minimum, the City should have searched the network, local, and paper files of elected officials or employees of the City, who were likely to have sent or received communications regarding Robinson's employment during the relevant time frames, such as City Managers, City Commissioners, human-resource personnel, Robinson's supervisors, and Public Works Department secretaries .

---

[4] Despite going out of its way to preserve it for production in this case, the City admits it has never searched Baugher's personal storage devices for responsive ESI.  Contrary to prior representations [*e.g.*, Metzinger Depo., Ex. E, 46:15-25], the City now concedes that Digital Mountain, who preserved some of Baugher's ESI, never performed any searches for responsive documents on Baugher's devices.  [Doc. 120, p. 3]  Nor has the City's counsel performed those searches.  [*See* Galdean Decl., Doc. 105-1, ¶7 (explaining that the devices sit in counsel's office "untouched," i.e., unreviewed).]

Instead of searching these sources for responsive documents, the City turns its discovery obligations on their head, arguing that *Robinson* somehow was required to identify every repository *the City* was required to search. [Doc. 104, p. 6, 8.] But the obligation to understand the location of a party's documents and to ensure that potentially responsive documents are searched runs to that party's counsel—not to the propounding party. *E.g.*, *Cardenas v. Dorel Juvenile Group*, No. 04-2478, 2006 U.S. Dist. LEXIS 37465, at *23 (D. Kan. June 1, 2006).

The City also makes the novel argument that Robinson has some sort of obligation to demonstrate the relevance of any source of potentially-responsive documents before the City is required to search it. [Doc. 120, p. 8 & n.4.] Reason and the law are to the contrary, as Robinson need only show that he has requested documents that are within the Federal Rules' liberal scope of discovery, which he has done; the City now has the duty, which it has ignored in this case, to locate and to produce the responsive documents in its possession, custody, or control, regardless of where they might be located.

## D. THE CITY UTILIZED INAPPROPRIATE AND INADEQUATE KEYWORD SEARCHES.

The City's limited keyword searches are inappropriate and inadequate. Keyword searches are notoriously inaccurate and, therefore, particularly inappropriate in cases like this, where, as the City does not dispute, the volume of electronic data being reviewed is so small that a manual review of the data is a reasonable alternative.[5] The City's complaint that a manual

---

[5] The fact that Robinson has identified responsive e-mail communications that "were not returned by defense counsel's search" [Doc. 120, pp. 3-4] underscores the inadequacy of the City's keyword searches in this case. Notably, the City never denies the existence or its possession of these unproduced documents.

search of the extremely narrow collection of ESI it gathered in this case would have required it to "manually review each and every document in its possession" is pure hyperbole.[6]

The City tries to blame Robinson for the inadequacy of its keyword searches, which the City admits did "not return[]" all responsive documents, because he never told the City what "additional search terms" it should use.  [Doc. 120, pp. 2, 4, 7, and 8.]  But Robinson could not possibly have offered any "additional" search terms when the City repeatedly refused to disclose the search terms it used.  [*See* Doc. 104, p. 11.]  Neither the City nor its counsel ever disclosed the search terms the City used to locate responsive documents, at least not until the City unveiled them for the first time in its Response to this Motion [*e.g.*, Doc. 120, p. 2], even though Robinson asked specifically about these searches during the City's Rule 30(b)(6) deposition [*e.g.*, Metzinger Depo., Ex. E, 68:1-8].

### E.     THE CITY INHERENTLY REFUSES TO PRODUCE DOCUMENTS NOT SPECIFICALLY IDENTIFIED BY ROBINSON.

Taking the blame game to its ultimate extreme, the City contends that its responses were adequate because Robinson "does not set forth a single document which Plaintiff believes Defendant should have but failed to produce."  [Doc. 120, p.7.]  But Robinson has no obligation to specifically identify each document he expects the City to produce.  If that were the case, there would be no "discovery" at all in federal court, as document production would be limited entirely to the universe of documents an opposing party already knows about.  Clearly, that is not the standard.

---

[6] By contrast, had the City fulfilled its obligation to locate and to collect all potentially responsive sources of ESI, such as, for example, by making a mirror image of all e-mail files on its network server, then a thorough keyword search of this large repository of documents might have been appropriate or even necessary.

To make matters worse, the City has not even complied with the extremely restrictive discovery standard it advocates.  The City admits Robinson identified two responsive e-mail communications it failed to produce [Doc. 120, p. 7], but it does not explain why it never searched for or produced them.  The City also admits that it failed to produce responsive deposition transcripts from another case, but it does not explain why, more than two months after receiving written authorization to produce them, it has not produced them.[7]  [*See* Doc. 120, p. 5.] And the City does not even address its non-production of paper documents specifically identified by the City, such as the packet of information the City mailed to the Mediation Committee members who decided Robinson's grievance.  [Doc. 104, p.11.]

## II.     TO REMEDY THE CITY'S DISCOVERY MISCONDUCT, THE COURT SHOULD ORDER THE PRODUCTION OF A FORENSIC IMAGE OF THE CITY'S ESI AND ADDITIONAL PAPER DISCOVERY.

To remedy the City's failure to locate and produce responsive documents, Robinson asks the Court to order the City (1) to investigate whether it had located and reviewed all sources of potentially responsive paper documents and (2) to produce, either directly to Robinson or to a court-appointed special master, forensic copies of its ESI.  [Doc. 104, p. 26-28.]  The City's response does not dispute the merit of either remedy.

First, the City ignores Robinson's claim that it failed to adequately search for responsive paper documents and his demand that the City go back and look for responsive paper documents.

Second, the City never argues that the Court should not order it to produce a forensic copy of its ESI.  It merely contends that "direct inspection of an opponent's hard drive is

---

[7] Nor is Robinson aware of any authority that would permit the City to redact the transcripts before producing them, as the City apparently intends to do.  The request for these transcripts is not a "peripheral dispute."  This Motion relates to the City's efforts to locate and to produce responsive documents—paper or electronic.  This dispute is not time-barred, either, as it, too, was part of the parties' continuing dialog regarding outstanding discovery disputes that the parties were teeing up for resolution in this Motion.  [*See* Doc. 104, pp. 7-8.]

anything but routine." [Doc. 120, p. 9.]  This contention is a red-herring: *Robinson does not ask the Court to allow him to **directly** inspect the City's electronic storage devices.*

Robinson requested only a *forensic copy* of the City's ESI so that he, or a court-appointed special master, could conduct the discovery the City has refused to conduct.  Even the City's authorities clearly permit forensic imaging.  In *McCurdy Group v. American Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001), the Tenth Circuit upheld a district court's decision not to compel the direct inspection of an opponent's hard drive, because the moving party could not explain why its inspection of a copy of the drive or the drive's inspection by a neutral third-party were unsatisfactory alternatives.  And in *Genworth Financial Wealth Management, Inc. v. McMullan*, 267 F.R.D. 443, 447 (D. Conn. 2010), the Court compelled defendants to produce a forensic image of their computer equipment and even awarded the plaintiff its attorneys' fees and expenses.  An order to compel production, plus an award of fees, is appropriate, here, as well.

## III.    THE CITY FAILED TO APPEAR AT ITS RULE 30(B)(6) DEPOSITION.

The City makes no attempt to dispute or defend its presentation of a Rule 30(b)(6) designee who was not prepared to testify as to the City's document-production efforts.[8]  The City initially purported to cure its failure to appear by producing an expert to testify as to the City's searches, delaying resolution of this issue, even though it now admits that its expert had nothing to do with any search for responsive documents.  Because the City's failure to appear has wasted

---

[8] Oddly, the City contends only that Robinson makes an "untimely request to reopen the 30(b)(6) deposition" in violation of the Local Rules.  [*See* Doc. 120, p.4.]  But the City never explains why it thinks Robinson's motion, which the parties agreed Robinson could pursue [*see, e.g.*, Pretrial Order, Doc. 122, ¶15(b)(3)], is untimely and does not cite any particular Local Rule that it thinks has been violated.  Even aside from these baseless allegations, *Robinson never even requested that the Court reopen the City's Rule 30(b)(6) deposition!*  Instead, Robinson recognizes that the production of a forensic copy of the City's ESI moots any need for additional deposition testimony as to the City's production efforts.  But it does not excuse the City's violation of its Rule 30(b)(6) obligations, a failure the Court must sanction.

an enormous amount of Robinson's and this Court's time, the Court must sanction the City by awarding Robinson his fees and expenses associated with the Rule 30(b)(6) deposition.

## IV.     THE COURT MUST SANCTION THE CITY FOR ITS MISCONDUCT.

The City's cavalier attitude towards and noncompliance with its discovery obligations demand monetary sanctions under Rule 26, Rule 37, and the Court's inherent powers.   [*See* Doc. 104, pp. 44-46.]  The City offers no plausible justification for its discovery misconduct and makes no argument that sanctions in this instance would be unjust.  At the Court's request, Robinson will submit an accounting of his expenses.

## CONCLUSION

The City made no effort to search for responsive paper or electronic documents beyond the keyword search of four users' network e-mail files and the review of one person's paper files. It further obfuscated discovery by refusing to disclose its document-production efforts during its Rule 30(b)(6) deposition and by sending Robinson down a rabbit trail with its expert witness, who, the City now admits, had no involvement in the search for documents responsive to Robinson's production requests.  The City's repeated failure to produce responsive documents and its continued delay in this case demand that the Court (1) order the production of a forensic image of its ESI and further inquiry into potentially responsive paper documents and (2) sanction the City for its misconduct.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By */s/ Charles E. McClellan*
    C. Edward Watson, II, #23386
    Todd N. Tedesco, #15652
    Charles E. McClellan, #23692
    1551 N. Waterfront Parkway, Suite 100
    Wichita, KS 67206-4466
    Telephone: 316.267.6371
    Facsimile: 316.267.6345
    cewatson@foulston.com
    ttedesco@foulston.com
    cmcclellan@foulston.com

    ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2011, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Alan L. Rupe E-mail: alan.rupe@kutakrock.com
Trinidad P. Galdean E-mail: trinidad.galdean@kutakrock.com
Jessica L. Garner E-mail: jessica.garner@kutakrock.com
Kutak Rock LLP
1605 N. Waterfront Parkway, Ste. 150
Wichita, KS 67206

          */s/ Charles E. McClellan*
          Charles E. McClellan, #23692