**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **TRENCE ROBINSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-1431-JAR-GLR** |
| | ) | |
| **CITY OF ARKANSAS CITY, KANSAS,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

The Court has the following motions under consideration: (1) Defendant's Motion for

Protective Order (ECF No. 76); Plaintiff's Motion to Compel Production of Items Identified on

Defendant's Privilege Log (ECF No. 98) (First Motion to Compel); and Plaintiff's Motion to Compel

Production of Documents and for Expenses (ECF No. 103) (Second Motion to Compel). For the

reasons set out below, the Court finds the motion for protective order moot in part and grants it in

part and grants in part and denies in part both motions to compel.

**I.     Nature of the Matter Before the Court**

This is a civil rights and employment law action. Plaintiff makes various allegations against

his employer, the City of Arkansas City, Kansas ("the City" or "Defendant").[1] He contends that in

2007 he accepted a promotion offered by Gary Baugher, a former supervisor at the Defendant City.[2]

Plaintiff further contends that Baugher modified personnel records after promoting him.[3]

To obtain relevant documents, including electronic files and emails, Plaintiff served

---

[1]*See* Pretrial Order (ECF No. 138) ¶ 2.

[2]*See id.* ¶ 5.a. at 8-9.

[3]*See id.* at 10.

Defendant with his First Requests for Production of Documents (First RFP).[4]  These requests and the responses led to a deposition of Matt Metzinger under Fed. R. Civ. P. 30(b)(6) to inquire about efforts of Defendant to locate and produce responsive documents, including electronically stored information (ESI).[5]  The deposition led to the designation by Defendant of Calvin Weeks as an expert.  Plaintiff served a subpoena duces tecum to depose Mr. Weeks, pursuant to Fed. R. Civ. P. 45.  Defendant then moved for a protective order.  After the deposition of Weeks and other efforts to obtain documents and ESI responsive to the First RFP, Plaintiff filed the two motions to compel.

## II.    Matters Relevant to Current Discovery Disputes

In a grievance filed against Defendant in June 2008 Plaintiff contended he was denied a promotion.[6]  Later that month Defendant hired outside counsel to represent it against the grievance and an anticipated administrative proceeding.[7]  In an administrative charge of discrimination filed in August 2008, Plaintiff contended he was denied a promotion and pay increase because of his race.[8]  He pursued his grievance about the alleged promotion before a Mediation Committee on December 8 and 30, 2008.[9]  The committee members were Charles Jennings, Mark Paton, and Judy

---

[4]*See* ECF No. 93-29 (First RFP, attached as Ex. BB to Pl.'s Mem. Opp'n Def.'s Mot. Prot. Order).  Many relevant exhibits are attached to multiple filings.  Given the number of motions and related filings at issue, the Court will generally cite to filings by their ECF number with exhibits denoted as a subpart.  Because Plaintiff's original memorandum in opposition to Defendant's motion for protective order separates each exhibit into its own discrete subpart, the Court will generally cite to those exhibits when possible.

[5]*See* Am. Notice to take Dep. (ECF No. 29).

[6]*See* Decl. Galdean (ECF No. 118-1) ¶ 3.

[7]*See id.* ¶ 5.

[8]*See id.* ¶ 4.

[9]*See* Pretrial Order ¶ 4.a. 3-4.

Reedy.[10]

In February 2009 Defendant removed Baugher's notebook computer from service to preserve its data for litigation.  It provided him with a new computer, using copies of his previous files.[11] Three months later Defendant sent the first computer to Digital Mountain for preservation and creation of a backup version.[12]  Through its employee – Weeks – Digital Mountain received three items from Defendant – a laptop computer with hard drive, an external hard drive, and a flash drive, which Weeks forensically imaged.[13]  When Baugher left employment with the City in early 2010, his newer computer was placed in the City's vault.  It remained there, until it was delivered to defense counsel in mid-to late-May 2011.[14]

Plaintiff commenced this action in December 2010.[15]  Two months later the parties discussed disclosure and discovery of ESI during a discovery conference, pursuant to Fed. R. Civ. P. 26(f).[16] As reflected in a report submitted to the Court on March 17, 2011:

> At the time of the Rule 26(f) conference, counsel discussed that steps had been taken to ensure their respective clients meet their obligations to preserve electronically stored information.

---

[10]*See id.* ¶ 4.a.(11).

[11]*See* Tr. Dep. Metzinger at 35-40 (ECF No. 93-32).

[12]*See id.* at 35-37.

[13]*See* Expert Report (ECF No. 93-34) (outlined in Ex. B as documented on a Processing Worksheet and a Chain of Custody form).

[14]*See* Tr. Dep. Metzinger at 35, 40-42.

[15]*See* Compl. (ECF No. 1).

[16]*See* Report of Parties' Planning Conference (ECF No. 127-1) at 1 (showing conference took place on February 9, 2011).

The parties have conferred about, but do not at this time agree upon the manner of producing recovered electronically stored information or which party will bear the cost burden of recovering electronically stored information, whether [accessible] or not readily accessible, or the necessity and appropriateness of producing documents, "imbedded data", "data", or "metadata" during discovery.

The parties intend to produce some of the ESI in hard copy or static form (e.g., .pdf or .tif images) thereby allowing documents produced to be indexed and individually marked through "Bates" stamp.  The parties reserve the right to request production of ESI in any other format, including the production of embedded data and other metadata, while the producing party reserves the right to object to such request.

Plaintiff specifically requests that Defendant produce in native format (with all current associated data intact) the ESI relating to the exhibits Defendant submitted to the mediation panel that considered Plaintiff's grievance in December 2008 and relating to any similar job-related documents that Gary Baugher gave to Plaintiff and other employees (e.g., Tony Tapia and Randy Jacobs) in 2007.

Plaintiff disagrees that any of the native format ESI is inaccessible, but is rather data that either is on a computer hard disk or on defendant's network server.  Plaintiff asserts that these word process documents and email communications is not "inaccessible" and in no event should plaintiff be required to bear the cost of the production of this ESI.[17]

On March 30, 2011, Digital Mountain "performed a keyword search of Word Documents found in email and stored loosely on the drives."[18]  It also searched "for deleted word documents (1st level deletion)."[19]  The next day it extracted metadata from two documents.[20]

On April 11, 2011, Plaintiff served his First RFP, which defines documents as both hard copy and electronic formats, and specifically states:  "To the extent that a document exists in electronic

---

[17]*Id.* at 4-5.

[18]*See* Expert Report at 1.

[19]*See id.*

[20]*Id.* at 2.

format, defendant request [sic] that an electronic copy be produced."[21]  Of the eleven requests, only

Request 8 specifies a particular format for production – "both native electronic format and hard

copy."[22]

Following a conference later in April, the Court issued a scheduling order that includes the

following ESI provision:

> Consistent with the parties' agreements as set forth in the planning conference report
> submitted pursuant to Fed. R. Civ. P. 26(f), electronically stored information (ESI)
> in this case will be handled as follows: The parties intend to produce some ESI in
> hard copy or static form (e.g., .pdf or .tif images). The parties disagree about who
> should bear the cost of any production in native format (with all current associated
> data intact) of ESI relating to the mediation panel that considered plaintiff's grievance
> in December 2008 and relating to any similar job-related documents that Gary
> Baugher gave to plaintiff and other employees (e.g., Tony Tapia and Randy Jacobs)
> in 2007.[23]

On May 11, 2011, Defendant served Plaintiff with responses and objections to the First

RFP.[24]  Upon completion of an ESI search after its initial response, Defendant provided a privilege

log on June 1, 2011.[25]  On June 6, 2011, Plaintiff served a deposition notice under Fed. R. Civ. P.

30(b)(6) to inquire about efforts by Defendant to locate and produce documents (including ESI)

responsive to the First RFP.[26]  Three days later, Defendant produced its representative, Matt

Metzinger, who testified that Digital Mountain had Baugher's original computer and defense counsel

---

[21]ECF No. 93-29 at 2-3.  The reference to "defendant" is clearly a typographical error.

[22]*See id.* at 3-5.

[23]*See* Scheduling Order (ECF No. 13) at 4.

[24]*See* ECF No. 93-30.

[25]*See* ECF No. 118 at 5; ECF No. 99-2 (Ex. E).

[26]*See* Am. Notice to take Dep. (ECF No. 29).

had the replacement computer.[27]  Accordingly, Metzinger would refer Plaintiff to Digital Mountain or defense counsel when asked about the content on those computers.[28]  But he did testify that no one searched the replacement computer for documents responsive to the First RFP while it was in the vault.[29]  He also testified that Defendant sought paper copies of responsive documents by searching file cabinets in the office of its HR Manager, Marla McFarland.[30]

On June 13, 2011, Defendant supplemented its responses to the First RFP.[31]  As of June 17, 2011, given the lack of information from the Rule 30(b)(6) deposition, Plaintiff was prepared to file a motion to compel Defendant to produce documents responsive to the First RFP.[32]  But Defendant informed Plaintiff it intended to submit an expert report by Calvin Weeks, a consultant with Digital Mountain, regarding his forensic examination of Baugher's original computer and devices.[33]  In a report dated June 20, 2011, Weeks described his searches for ESI from items listed in Exhibit B of his report.[34]  He performed a "keyword search of Word Documents" on March 30, 2011; extracted metadata from two documents the next day; and searched for Word documents equivalent to three

---

[27]Tr. Dep. Metzinger at 38, 41.  The replacement computer was taken out of the vault and delivered to defense counsel approximately two to three weeks before the Rule 30(b)(6) deposition. *Id.* at 41-42.

[28]*See id.* at 44, 54, and 106-08.

[29]*See id.* at 42-43.

[30]*Id.* at 72.

[31]*See* ECF No. 99-2 (Ex. H).

[32]*See* Pl.'s Mot. Leave File Mot. Compel Out of Time (ECF No. 45).

[33]*See* ECF No. 93-33 (Ex. GG).

[34]*See* Expert Report (ECF No. 93-34).

PDF files on May 17, 2011.[35]

Plaintiff viewed the searches by Weeks as "woefully inadequate."[36]  He issued a subpoena to Weeks on July 14, 2011.  It directed him to produce the following documents and things: (1) computer referenced in Exhibit B of his report; (2) hard drive referenced in that exhibit; (3) "[a]ny other electronic storage media" received from Defendant; (4) all hardware or software tools utilized in any search or forensic evaluation of items listed in 1, 2, or 3; and (5) "all documents and things, including, but not limited to, e-mails, electronic files, notes, correspondence, reports, memoranda, print-screen reports, video, and/or audio recordings, relating to the review and forensic examination of the devices outlined in Exhibit B" of his report.[37]  With discovery closing the next day,[38] the parties jointly moved for leave to conduct depositions outside the discovery deadline, including one for Weeks, Defendant's identified expert.[39]  On July 15, 2011, Defendant produced an amended privilege log.[40]  On August 8, 2011, the Court granted the joint motion.

Defense counsel received the subpoena for Weeks on July 18, 2011.[41]  On the following day Digital Mountain asked Weeks to return items in categories 1, 2, and 3 of the deposition notice,

---

[35]*See id.*

[36]ECF No. 96 at 20.

[37]*See* Subpoena (ECF No. 77-2).  Consistent with prior practice for Defendant's third-party witnesses, Plaintiff sent the subpoena to defense counsel for delivery to Weeks.  *See* ECF No. 96 at 21.  There appears to be no dispute that defense counsel ultimately delivered the subpoena to Weeks.

[38]*See* Scheduling Order (ECF No. 13).

[39]*See* Joint Mot. for Limited Leave to Conduct Deps. Outside of Discovery Deadline (ECF No. 64).

[40]*See* ECF No. 99-2 (Ex. I).

[41]*See* ECF No. 93-39 (Ex. MM).

because defense counsel wanted them prior to the scheduled deposition.[42]  On July 27, 2011, Defendant filed its motion for protective order.[43]  At his deposition two days later Weeks testified that he had possession, custody, and control of the items in categories 1, 2, and 3 of the notice from May 12, 2009, through July 20, 2011, when he returned them to defense counsel.[44]  He did not recall if he had yet been served with the subpoena when he returned the items.[45]

On August 12, 2011, Defendant produced a second amended privilege log.[46]  Later that month Plaintiff filed his first motion to compel, seeking documents withheld on grounds of privilege and work product.[47]  Early the next month he filed his second motion to compel, addressing his First RFP more globally.[48]  The parties have exhaustively briefed the motions, which are ready for ruling.

## III.    MOTIONS TO COMPEL

By his first motion (ECF No. 98) Plaintiff seeks to compel Defendant to produce documents responsive to his First RFP and later identified on its privilege log.  He argues that Defendant has waived all privileges except as to Request 6, and that documents responsive to that request are not protected by any privilege.  By his second motion (ECF No. 103), Plaintiff seeks to compel Defendant to (1) make additional efforts to locate and produce paper documents and ESI responsive to his

---

[42]*See* ECF No. 93-40 (Ex. NN).

[43]*See* ECF No. 76.

[44]*See* Tr. Dep. Weeks at 165 (ECF No. 93-27 (Ex. Z)).

[45]*Id.* at 165-66.

[46]*See* ECF No. 99-3 (Ex. M).

[47]*See* ECF No. 98.

[48]*See* ECF No. 103.

First RFP and (2) produce forensic copies of its ESI.  Further, to the extent Defendant has withheld

responsive documents, based upon its objections to the First RFP, Plaintiff seeks to compel their

production.

Under Fed. R. Civ. P. 34(a)(1) a party may request other parties to produce documents or

ESI.  The request "must describe with reasonable particularity each item or category of items to be

inspected" and "may specify the form or forms in which [ESI] is to be produced."[49]  The responding

party has thirty days to respond in writing, unless the time period is lengthened or shortened by order

of the court or a Rule 29 stipulation between the parties.[50]  "For each item or category, the response

must either state that inspection and related activities will be permitted as requested or state an ob-

jection to the request, including the reasons."[51]  If the responder objects to part of a request, it "must

specify the part and permit inspection of the rest."[52]  Absent an objection, "a party may not uni-

laterally modify a discovery request and respond to only a portion of the request."[53]

When responding to a request for production of ESI, the responder may object "to a required

form" and if such objection is asserted – "or if no form was specified in the request" – the response

must state the form or forms intended to be used.[54]  In addition, unless otherwise ordered by the court

or stipulated by the parties, the following procedures apply to producing documents or ESI:  (i)

---

[49]Fed. R. Civ. P. 34(b)(1)(A) and (C).

[50]Fed. R. Civ. P. 34(b)(2)(A).

[51]Fed. R. Civ. P. 34(b)(2)(B).

[52]Fed. R. Civ. P. 34(b)(2)(C).

[53]*Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005).

[54]Fed. R. Civ. P. 34(b)(2)(D).

documents must be produced "as they are kept in the usual course of business" or be organized and labeled "to correspond to the categories in the request;" (ii) ESI must be produced "in a form or forms in which it is ordinarily maintained or in a reasonably useable form or forms," unless the request specifies the form for production; and (iii) the same ESI need not be produced in more than one form.[55]

To adequately respond to a request for production, the respondent must "conduct a reasonable search for responsive documents."[56]  Parties, along with their employees and attorneys, have a duty to act "competently, diligently, and ethically" with respect to discharging discovery obligations.[57]  This requires a joint effort "to identify all employees likely to have been authors, recipients or custodians of documents" responsive to the requests for production.[58]  Parties "jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents."[59]  A party does not "meet its discovery obligations by sticking its head in the sand and refusing to look for [documents]."[60]  It is inexcusable, furthermore, to respond to a request for production without reviewing the computer of a primary actor in the sequence of events

---

[55]See Fed. R. Civ. P. 34(b)(2)(E).

[56]*FTC v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2011 WL 251449, at *3 (D. Kan. Jan. 26, 2011); *accord Hock Foods, Inc. v. William Blair & Co., L.L.C.*, No. 09-2588-KHV, 2011 WL 884446, at *8 (D. Kan. Mar. 11, 2011).

[57]*Cardenas v. Dorel Juvenile Group, Inc.*, No. 04-2478-KHV-DJW, 2006 WL 1537394, at *6-7 (D. Kan. June 1, 2006).

[58]*Id.* at *7.

[59]*Id.* at *6 (quoting *Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995)).

[60]*In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 653 (D. Kan. 1996).

leading to litigation.[61]

Rule 26(b)(5)(A) also requires responding parties to expressly assert claims of privilege and work product when they withhold otherwise discoverable information on those grounds.  The rule further requires them to "describe the nature of the documents, communications, or tangible things not produced or disclosed."  Parties responding to discovery have "the duty to timely provide the information required by Rule 26(b)(5)."[62]  More specifically, they have "a duty when asserting privilege to describe the nature of the documents, communications, or tangible things not produced or disclosed as required by Fed. R. Civ. P. 26(b)(5)(A)(ii)."[63]  Parties withholding privileged material must provide the notice and information required by Rule 26(b)(5) when they are otherwise required to object or provide the discovery under the federal rules of civil procedure.[64]  Withholding materials without the notice required by Rule 26(b)(5)(A) "is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege."[65]

The Court may deem waived any objection not initially asserted in response to a discovery

---

[61]*Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 WL 3146349, at *2 (D. Kan. Oct. 31, 2006).

[62]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

[63]*Cooper v. Old Dominion Freight Line, Inc.*, No. 09-CV-2441-JAR, 2011 WL 251447, at *10 (D. Kan. Jan. 25, 2011).

[64]*See Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.*, No.. 05-2433-JWL-DJW, 2007 WL 1347754, at *2 (D. Kan. May 8, 2007) (finding that inherent within Rule 26(b)(5) "is a requirement that the claim of privilege should be made at the same time that the privilege objection is lodged and the documents are withheld"); *Mike v. Dymon, Inc.*, No. 95-2405-EEO, 1996 WL 674007, at *9 (D. Kan. Nov. 14, 1996) (agreeing with *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1360 (D. Kan. 1995) that "Rule 26(b)(5) plainly contemplates" that compliance is required by the time documents are required to be produced under Fed. R. Civ. P. 34).

[65]Fed. R. Civ. P. 26(b)(5) advisory committee notes (1993 amend.).

request.[66]  Waiver may extend to objections of privilege for failure to timely assert them in accordance with Rules 33 or 34 or to comply with Rule 26(b)(5).[67]  In the context of Rules 33 and 34, untimely objections are "waived unless the court, for good cause, excuses the failure."[68]  A failure to comply with Rule 26(b)(5) likewise does not automatically result in waiver of the privilege.[69]  The "courts have reserved such a penalty for only those cases where the offending party committed unjustified delay in responding to discovery."[70]  Mitigating circumstances, such as "[m]inor procedural violations" and "good faith attempts at compliance," cut against finding waiver.[71]

A party seeking discovery under Fed. R. Civ. P. 34 may move to compel production or inspection when the other party "fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."[72]  For purposes of Fed. R. Civ. P. 37(a), "an evasive or incomplete . . . response must be treated as a failure to . . . respond."[73]

In its May 11, 2011 response to the First RFP, Defendant asserts various objections,

---

[66]*Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005).

[67]*Cotracom*, 189 F.R.D. at 662 (recognizing that a failure to comply with Rule 26(b)(5) may result in waiver); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496-97 (D. Kan. 1998) (recognizing that untimely objections under Rules 33 and 34 may result in waiver of privilege); *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 200 (D. Kan. 1996) (failure to timely assert in context of Rule 33).

[68]*See Starlight*, 181 F.R.D. at 496-97 (applying standard set out in Fed. R. Civ. P. 33(b)(4) to untimely objections to requests for production under Rule 34).

[69]*Queen's Univ. v. Kinedyne Corp.*, 161 F.R.D. 443, 447 (D. Kan. 1995).

[70]*White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008).

[71]*See id.*

[72]Fed. R. Civ. P. 37(a)(3)(B)(iv).

[73]Fed. R. Civ. P. 37(a)(4).

including an objection of privilege or work product against Request 6. Responding to Plaintiff's first motion to compel, it argues that it had no duty to produce or identify privileged information in response to his requests, which it describes as overly broad and seeking irrelevant information. In response to the second motion to compel, Defendant similarly argues that its production is sufficient, given "Plaintiff's extraordinarily broad and burdensome demands." It urges the Court to deny the second motion in its entirety upon grounds the "discovery requests are grossly overbroad" and subjects it to undue burden by using "omnibus terms such as 'relating to' and 'regarding'" to modify all documents. In passing, it also contends that Plaintiff has not explained the relevance of emails of Tony Tapia, Randy Jacobs, and Mary Bartlett. In response to the two motions to compel, Defendant points no objection directly against any specific request for production.

In general, the party resisting discovery has the burden to show how requested discovery is objectionable.[74] That burden requires the objecting party to show in its response to a motion to compel how each interrogatory or request for production is objectionable.[75] "When ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon in response to the motion. It generally deems objections initially raised but not relied upon in response to the motion as abandoned."[76] Further, if the respondent fails to initially lodge a particular objection to a request for production, the Court will find the objection waived unless it excuses the

---

[74]*High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2011 WL 4036424, at *10 (D. Kan. Sept. 12, 2011); *Employers Commercial Union Ins. Co. of Am. v. Browning-Ferris Indus. of Kan. City, Inc.*, No. 91-2161-JWL, 1993 WL 210012, at *2 (D. Kan. Apr. 5, 1993).

[75]*Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 519 (D. Kan. 2010).

[76]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999); *accord Cooper v. Old Dominion Freight Line, Inc.*, No. 09-CV-2441-JAR, 2011 WL 251447, at *2 & n.2 (D. Kan. Jan. 25, 2011); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996).

failure for good cause.[77]

For purposes of ruling on the two motions to compel, the Court deems abandoned all objections not relied upon in response to the motions. Consequently, it considers only the objections of (1) irrelevancy; (2) undue burden and overbroadness caused by the use of omnibus terms; and (3) privilege and work product.

## A. General Objections

In response to the motions, Defendant asserts two general objections that are arguably relevant. It objects generally "to each and every Request for Production which is overly broad and not reasonably calculated to lead to the discovery of admissible evidence" and "to any request to the extent it calls for the production of electronic documents, files, or data that require Defendant to undertake an unreasonable burden of inquiry or incur excessive costs in locating, searching, and/or restoring such material."[78] This Court has long denounced, however, "the practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery."[79] Because such objections are worthless and merely delay discovery, the Court does not consider them as valid.[80] Although the first quoted general objection avoids the phrase "to the extent," it similarly has no definitive applicability until after some later consideration or determination. Insertion of the phrase "which is" provides no hint as to which request the objection is aimed. It leaves both the opposing party and the Court to pursue some guessing game for its application. When parties assert "hypo-

---

[77]*Starlight*, 181 F.R.D. at 496-97.

[78]ECF No. 93-30 at 2.

[79]*See Starlight*, 181 F.R.D. at 497.

[80]*Id.*

14

thetical or contingent possibilities" as an objection, they make "no meaningful effort to show the application of any such theoretical objection" to any particular discovery request.[81]   For these reasons the Court rejects the above-quoted general objections as worthless.

### B. Irrelevancy

In response to the First RFP, Defendant specifically objects that Requests 7,[82] 9,[83] and 10[84] seek irrelevant information.  When responding to the first motion to compel, it asserts generally that the First RFP sought irrelevant documents.  In response to the second motion to compel, it only raises relevancy as an objection against producing emails of Bartlett, Tapia, and Jacobs.[85]  By its responses to the motions, Defendant continues to pursue simply a general objection of irrelevancy. Except as to the three specific requests addressed by the second motion, the Court deems the objection waived.  Defendant has shown no good cause for failing to timely assert the objection

---

[81]*Id.*

[82]Request 7 seeks "all '.pst' files of Gary Baugher concerning or reflecting Robinson's employment by the City from January 1, 2006 to the present."  Files in PST format are generally associated with the Microsoft Outlook email program.  *See United States v. Burgess*, 576 F.3d 1078, 1093 (10th Cir. 2009); *Semsroth v. City of Wichita*, 239 F.R.D. 630, 633 (D. Kan. 2006).

[83]Request 9 seeks "all files, documents, memoranda, notes, or e-mails concerning, relating to, or discussing the positions of Sanitation Foreman, Labor Foreman, or Assistant Superintendent Storm Water from January 1, 2006 to the present."

[84]Request 10 seeks "all files, documents, memoranda, notes, or e-mails created or revised since January 1, 2006, discussing Robinson."

[85]Defendant also asserts that deposition transcripts of Bartlett are "entirely irrelevant" to the second motion to compel and characterizes this part of the motion as "an entirely peripheral dispute." *See* ECF No. 120 at 5.  Because Defendant indicates that it wants to review the transcripts "to determine whether any redactions need to be made **before they are produced**," *see id.* (emphasis added), production of these transcripts no longer appears in dispute.  The Court can later determine the propriety of a redacted production, if that matter is properly brought before it.

against the other requests.[86]

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the general scope of discovery.[87]  Since amendments in 2000, the rule provides "a two-tiered discovery process; the first tier being attorney-managed discovery of information relevant to any claim or defense of a party, and the second being court-managed discovery that can include information relevant to the subject matter of the action."[88]  Under this two-tiered process, objections on grounds of relevancy require the courts to first "determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action."[89]

At the discovery stage of litigation, relevancy is broadly construed and courts should consider requests for discovery relevant "if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party"[90] or "to the subject matter of the action."[91]  When the relevancy of requested discovery is not apparent, the party seeking the discovery has the burden to show its relevance.[92]  On the other hand, when requested discovery appears relevant, the party

---

[86]*See Starlight*, 181 F.R.D. at 496-97.

[87]Rule 26(b)(1) provides: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

[88]*In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009).

[89]*Id.* (quoting Fed. R. Civ. P. 26(b)(1) (2000 amend.)).

[90]*Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010).

[91]*Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999) (quoting *Smith v. MCI Telecomms. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991)).  Despite the changes to Rule 26(b)(1) in 2000, the standard enunciated in "*Etienne* remains good law."  *Sheldon v. Vermonty*, 204 F.R.D. 679, 690 n.7 (D. Kan. 2001).

[92]*Mackey v. IBP, Inc.*, 167 F.R.D. 186, 193 (D. Kan. 1996).

objecting to the discovery has the burden to show that the discovery does not fall within the broad scope of relevance set out in Rule 26(b)(1) or "is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."[93]

Requests 7, 9, and 10 appear facially relevant to claims or defenses in this action. Baugher played a major role in the matters being litigated here. PST files responsive to Request 7 appear to fall within the broad scope of relevance. It also appears reasonable that documents responsive to Requests 9 and 10 may be relevant to claims and defenses in this action. Plaintiff contends he was promoted to "Sanitation Foreman" by Baugher.[94] But Defendant contends that no such position exists.[95] Plaintiff submits that, at the 2008 Mediation Hearing, Defendant used documents related to the other two positions listed in Request 9 to support its claim that the Sanitation Foreman position does not exist.[96]

Given the facial relevancy of these requests, Defendant as the objecting party must show that they are irrelevant or of such marginal relevance as to defeat the discover because of some potential harm it could suffer. Defendant has made no such showing. It does not even address the relevancy of the particular requests. It merely argues generally that emails of Bartlett, Jacobs, and Tapia are irrelevant. Its argument does not meet its burden. For purposes of discovery, moreover, the emails appear relevant. Bartlett testified at the grievance hearing, thus making her emails potentially relevant to a claim or defense. Tapia and Jacobs were peers of Plaintiff whom Defendant has com-

---

[93]*Id.* (citation omitted).

[94]Pretrial Order at 9.

[95]*Id.* at 12-13.

[96]ECF No. 104 at 38.

pared to him.  Such comparisons raise the possibility that their emails are relevant to a claim or defense in this action.

For these reasons the Court overrules the objections that Requests 7, 9, and 10 seek irrelevant documents.  To the extent the emails of Bartlett, Jacobs, and Tapia are responsive to Requests 7, 9, and 10, the objection of irrelevance fails.  To the extent the emails are responsive to other requests, Defendant has also failed to assert any valid objection of irrelevancy to prevent their production.

### C.  Overly Broad and Unduly Burdensome

Defendant urges the Court to deny the second motion to compel upon grounds the requests in the First RFP are overly broad and unduly burdensome, due to their use of omnibus phrases such as "relating to" and "regarding" to apply to an unlimited range of documents.  In response to the first motion to compel, Defendant similarly argues that the requests are overly broad in seeking "any and all documents" discussing, concerning, or related to Plaintiff.

Defendant asserts the following objection in direct response to each of the Requests 2 through 10:  "Defendant objects to the extent the request is overly broad, non specific and constitutes a 'fishing expedition' in its reference to 'any and all documents and things.'"[97]  By asserting this objection specifically against each of the listed requests, it is reasonable to construe it as applicable to each request.  Because the objection is asserted against each of the requests, the Court can reasonably construe the language as stating a partial objection that each of Requests 2 through 10 is overly broad to the extent it seeks "any and all documents and things," rather than stating a contingent objection of overbroadness that only applies after some later determination.[98]  Because Defendant

---

[97] *See* ECF No. 93-30 at 3-17.

[98] Drafted discovery requests should be as concise and clear as possible.  Unnecessarily using phrases such as "to the extent" creates avoidable confusion as to whether the responding party is

has asserted no similar objection against Request 1 or 11 or shown good cause to consider such an objection, the Court deems the objection waived with respect to them.[99]

Although the Court considers the objection to Requests 2 through 10 as overly broad and unduly burdensome, the objection fails primarily for failure by Defendant to substantiate it.  Defendant relies on what it perceives as facial overbroadness that creates an undue burden.  As the responding party, it has the burden to support its objections that requests are overly broad and unduly burdensome; unless the Court finds a particular request overly broad or unduly burdensome on its face, because "it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope."[100]

Defendant focuses its objection of overly broad and unduly burdensome against the phrase "any and all documents and things" within the requests.  The mere use of that phrase, however, does not make the request *per se* overly broad.  The overall wording of a request determines whether it is overly broad.[101]  Defendant's responses to the motions to compel refocus its objection on Plaintiff's use of "omnibus terms such as 'relating to' and 'regarding'" in the requests for production in conjunction with seeking all documents.

Use of omnibus phrases such as "relating to" often makes a request overly broad when the

---

actually stating an objection.  In this instance, for example, it would have been preferable to concisely state:  "Defendant objects to this request, because it is overly broad in that it seeks any and all documents and things.  Without waiving that objection, Defendant will produce the following documents that are properly discoverable."

[99]*See Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496-97 (D. Kan. 1998).

[100]*Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *6 (D. Kan. Oct. 5, 1995).

[101]*See Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 665-66 (D. Kan. 1999).

phrase modifies all documents, rather than a specific type of document.[102]  "Requests should be reasonably specific, allowing the respondent to readily identify what is wanted."[103]  When a request is worded so broadly as to "require the respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request," the request is objectionable as overly broad.[104]

Request 2 seeks "[a]ny and all documents and things relating to communications by and between" Defendant and the three committee members in any combination "concerning any aspect" of the two hearings before the Mediation Committee (December 8 and 30, 2008) "regarding Robinson or any aspect of the subsequent written decision by the Mediation Committee."  While this request indeed uses broad language, its breadth is sufficiently narrowed by other language.  The request is reasonably interpreted to seek communications concerning the mediation hearings or the written decision of the committee.  The communications are further limited to those involving the four named participants in any combination.  For these reasons this request is not facially overly broad or unduly burdensome.

Request 3 seeks "documents maintained by any manager and/or supervisor . . . concerning" Plaintiff.  The request also identifies categories of documents that may be responsive.  To be responsive to Request 3, the document concerning Plaintiff must be maintained by a manager or supervisor.  This is sufficiently narrow to avoid its being overly broad or unduly burdensome on its face.

---

[102]*Id.* at 665.

[103]*Audiotext Commc'ns v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 18759, at *1 (D. Kan. Jan. 17, 1995).

[104]*Id.*

Request 4 seeks "employee handbooks, policy statements, procedure manuals or statement, and any other documents reflecting or concerning the City's employment policies and procedures in effect at any time from January 1, 1994 to the present."  The use of the term reflecting does not make this request overly broad, because language that follows it is reasonably precise.[105]  On the other hand, this request is facially overly broad to the extent it seeks "other documents" concerning the City's policies and procedures.  The combination of the non-specific "other documents" with the imprecise "concerning" leaves the respondent to guess as to what other documents are responsive.  Consequently, the request is facially overly broad to that limited extent.  The Court sustains the objection of Defendant as to "other documents" concerning the City's policies and procedures.

Request 5 seeks "all documents that reflect the organizational structure, and/or management of the City, and any changes in the same, from January 1, 1994 to the present."  Use of the term "reflect" does not of itself make this request facially overly broad or unduly burdensome.  But combined with the phrase, "organizational structure, and/or management of the City, and any changes in the same," the request appears facially overly broad and unduly burdensome.  The Court sustains this objection to Request 5.

Request 6 seeks:  "Copies of any notes or statements taken during interviews of any individual, whether such documents are in documentary form, or recorded via audio or video means, which were taken by you or any agent working on your behalf that relate to any allegation at issue in the Complaint."  Although Defendant lodges an objection to this request "to the extent" it is overly broad "in its reference to 'any and all documents and things,'" the request does not incorporate that phrase.  Request 6, moreover, is narrowly drafted to request copies of interview notes or statements

---

[105]*Id.*

related to the allegations of the complaint.  The Court finds it neither facially overly broad nor unduly burdensome.

As already noted, Request 7 seeks "all '.pst' files of Gary Baugher concerning or reflecting Robinson's employment by the City from January 1, 2006 to the present."  By limiting the type of responsive documents to PST files, Plaintiff has appropriately narrowed the request.  Applying only to the files of Mr. Baugher, the Court finds it neither facially overly broad nor unduly burdensome.

Request 8 seeks "all documents reflecting any Job Description and any Performance Enhancement Program Review tendered by the City, either through Gary Baugher or any other employee of the City, to Robinson, Tony Tapia, and Randy Jacobs from January 1, 2006 to the present."  For this request, Plaintiff specifically requested that the "documents be produced in both native electronic format and hard copy."  The Court finds this request sufficiently narrow in its description of documents to withstand the objection that it is facially overly broad or unduly burden-some.

Request 9 seeks "all files, documents, memoranda, notes, or e-mails concerning, relating to, or discussing the positions of Sanitation Foreman, Labor Foreman, or Assistant Superintendent Storm Water from January 1, 2006 to the present."  This request is facially overly broad to the extent it seeks all "documents" concerning or relating to the identified positions.  It is not facially overly broad or unduly burdensome, however, as it applies to files, memoranda, notes, or e-mails.  The Court thus sustains the objection in part and overrules it in part.

Request 10 seeks "all files, documents, memoranda, notes, or e-mails created or revised since January 1, 2006, discussing Robinson."  The Court finds this request neither facially overly broad nor unduly burdensome.

For the foregoing reasons, the Court finds Requests 4 and 9 overly broad to a limited extent. It also finds Request 5 overly broad and unduly burdensome.  It otherwise overrules Defendant's objections of overbroadness and undue burden.

### D.  Privilege and Work Product

Defendant asserts an objection of privilege or work product only against Request 6, which seeks interview notes or statements that relate to allegations placed at issue by Plaintiff's complaint in this litigation.  It explains that it otherwise failed to object on these grounds because Plaintiff's overly broad requests did not obligate it to produce or identify privileged information.

The explanation finds some marginal support in the language of Fed. R. Civ. P. 26(b)(5)(A), which only applies "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material."  Because the Court has found Request 5 facially objectionable in its entirety, that request did not obligate Defendant to produce any documents or to identify documents protected by privilege or as work product.[106] But except in such extreme circumstances, Rule 26(b)(5)(A) does not otherwise eliminate the duty to produce non-privileged documents responsive to the other requests or to identify privileged documents to the extent the requests are not objectionable.  Even when a request is objectionable as overly broad or unduly burdensome, the responding party has a duty to lodge its objections, determine the extent to which the request is not objectionable, and produce unprivileged documents and

---

[106]Given the sustained objections against Request 5, Defendant had no duty to produce documents responsive to that request.  Accordingly, to the extent an entry on its privilege log identifies a document only responsive to Request 5, Defendant has no duty to produce such document.

identify privileged ones to that extent.[107]   Except for atypical requests like Request 5 that are objectionable in their entirety, the "otherwise discoverable" language merely affects the scope of the description, if any, required to comply with Rule 26(b)(5).[108]

Rule 26(b)(5)(A), moreover, does not alter the requirement of Fed. R. Civ. P. 34(b)(2) that parties timely assert their objections – even objections of privilege and work product protection.  It merely requires parties to expressly assert their claims of privilege or protection and describe items not produced.  Except as to Request 6, Defendant has not timely asserted its objections of privilege or work product.  That failure, except as to Requests 5 and 6, waived the objections; unless the Court otherwise finds good cause to the contrary.[109]

Defendant first urges the Court to find no waiver due to the breadth of the discovery

---

[107]See Fed. R. Civ. P. 26(b)(5) advisory committee notes (1993 amend.).  As explained in the advisory committee notes, when a party is faced with what it "believes in good faith" is an overly broad or unduly burdensome discovery request, "it should make its objection to the breadth of the request" and to the extent the request is not objectionable, "produce the unprivileged documents and describe those withheld under the claim of privilege."  To illustrate this point, the advisory committee uses an example involving a broad request for documents for a twenty year period that the responding party believes is unduly burdensome to the extent it seeks documents more than three years old – in this example, the responding party must initially produce or identify as privileged documents generated in the three-year period, and "[i]f the court later rules that documents for a seven year period are properly discoverable," then the responding party must produce non-privileged documents or properly describe privileged documents generated in the additional four year period.

[108]Relying on *United States v. Phillip Morris Inc.*, 314 F.3d 612 (D.C. Cir. 2003), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599 (2009), Defendant suggests that it need not produce a privilege log until the Court rules upon its timely asserted objections.  Neither *Phillip Morris* nor Defendant's suggestion address the failure to assert objections of privilege or work product.  The failure to describe withheld documents on a privilege log is distinct from a failure to assert an objection against the particular request for discovery.  The Court is currently considering waiver in the context of Defendant's failure to assert an objection, not its failure to produce a privilege log or to describe documents on the log provided.

[109]See Starlight Int'l, Inc. v. Herlihy, 181 F.R.D. 494, 496-97 (D. Kan. 1998).  Because the Court has found Request 5 facially objectionable in its entirety, waiver of non-asserted objections to that request never becomes an issue.

requests.[110]  As discussed above, the breadth of requests may impact the scope of the description

mandated by Rule 26(b)(5)(A) and in some cases the need for such description at all.  And in

extreme cases – such as Request 5 – the breadth of a discovery request may entirely excuse a failure

to assert an objection of privilege, even though waiver never actually becomes an issue in those

cases.  But in other circumstances the breadth of a discovery request does not provide good cause

for failing to assert an objection of privilege or work product.  In general the federal rules do not

contemplate piecemeal objections to discovery requests.  The rules provide a specific time for parties

to respond to requests for discovery.  Unless the response time is extended by the Court or through

proper stipulation of the parties under Fed. R. Civ. P. 29, responding parties must state all objections

to a particular request within the established deadline.  They cannot generally rely on unasserted

objections to avoid discovery.

Rule 34(b)(2)(C) contemplates objections mixed with production of documents to the extent

a request is non-objectionable.  When faced with an overly broad document request, responding

parties should identify the extent to which they view the request as proper, e.g., limit it to a certain

time-period or to specific categories of documents, and produce those responsive documents.  Parties

who merely object that a document request is overly broad or seeks irrelevant documents take on

the risk that the Court may disagree.  If the Court overrules the objections, production may be

ordered regardless of other possible objections that the responding party might but did not assert.

Unless the Court finds good cause to consider an untimely objection, such objection will be deemed

waived.  Other than Request 5, which is no longer at issue based upon the finding that it is facially

overly broad and unduly burdensome in its entirety, the breadth of the requests provide no good

---

[110]ECF No. 118 at 3-5.

cause for Defendant's wholesale failure to timely assert privilege or work product.

Defendant further urges the Court to find no waiver, because it uncovered responsive privileged documents during its search for ESI that occurred after its May 11, 2011 response.[111]  It provides no adequate explanation, however, for its failure to conduct an ESI search before responding to the First RFP.  As pointed out by Plaintiff, moreover, Defendant raised no additional objection of privilege or work product in its supplemental response on June 13, 2011.  Under these circumstances, its uncovering of privileged documents after its initial response provides no good cause for its untimely assertion of privilege or work product to Requests 1 through 4 and 7 through 11.  Accordingly, the Court finds the objections waived except as to Request 6.[112]

Defendant has withheld seven declarations from production on grounds they are protected by the attorney-client privilege and the work product doctrine.[113]  As the party invoking these protections, Defendant has the burden to show that they clearly apply.[114]  Carrying this burden requires

---

[111]*Id.* at 5.

[112]*See Starlight*, 181 F.R.D. at 496-97.  Given the failure of Defendant to timely assert objections of privilege or work product, there is no reason to address the litany of other alleged bases for finding waiver.  The Court will note, however, that Defendant's Second Amended Privilege Log (ECF No. 99-3 (Ex. M)) falls substantially below what is expected of such logs in this district.  *See Cont'l Coal, Inc. v. Cunningham*, No. 06-2122-KHV, 2007 WL 3245428, at *1 (D. Kan. Nov. 2, 2007) (identifying nine required categories of information to be included in a privilege log).  An insufficient log does not automatically result in waiver, *see High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM, 2012 WL 234024, at *4 (D. Kan. Jan. 25, 2012), and the circumstances here do not justify waiver with respect to the seven declarations responsive to Request 6.

[113]The declarations are by Randy Jacobs, Tony Tapia, Gary Baugher (two declarations), Charles Blass, Bruce Watson, and Bob Whyde.  *See* ECF No. 99-3 at 1.

[114]*See Cooper v. Old Dominion Freight Line, Inc.*, No. 09-CV-2441-JAR, 2011 WL 251447, at *5-6 (D. Kan. Jan. 25, 2011); *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *4 (D. Kan. Jan. 6, 1998).

competent evidence that establishes all elements of the asserted privilege.[115]  The party seeking protection must describe the documents in detail and provide precise reasons why they should be protected from discovery.[116]  Defendant makes no attempt to show that the declarations are protected by the attorney-client privilege.[117]  Accordingly, it has abandoned that objection.[118]

As set out in Fed. R. Civ. P. 26(b)(3), the work product doctrine, protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[119]  This doctrine has two distinct components – one which requires that the document or thing in question be created because of the anticipation of litigation and one that places reasonable limits on a party's anticipation of litigation.[120]  Whether a document constitutes work product depends on the primary reason for its creation.[121]  In fact, there is generally no

---

[115]*Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994).

[116]*Id.*

[117]*See* ECF No. 118 at 7-9 (discussing declarations only in context of work product).

[118]*See Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

[119]Relying on *EEOC v. Jamal & Kamal, Inc.*, No. 05-2667, 2006 WL 2690226 (E.D. La. Sept. 18, 2006), Plaintiff contends that work product protection "does not extend to documents that do not 'set[] forth the attorney's theory of the case and [their] litigation strategy." *See* ECF No. 99 at 10.  That case, however, misquotes *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975), which actually states:  "Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *See* 421 U.S. at 154.  This Court respectfully disagrees with the cited proposition of *Jamal & Kamal*.  The work product doctrine protects more than documents which reveal the attorney's theories and strategies.  Of course, the theories and strategies of counsel are entitled to heightened protection under Fed. R. Civ. P. 26(b)(3)(B).

[120]*United States Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 658 (D. Kan. 2007).

[121]*Marten*, 1998 WL 13244, at *10.

work product protection "unless the primary motivating purpose for creating the document is to assist in pending or impending litigation."[122]  Parties claiming work product protection must show an "underlying nexus between the preparation of the document and the specific litigation."[123]  With respect to work product, litigation is generally understood "to include proceedings before administrative tribunals if they are of an adversarial nature."[124]  A proceeding is adversarial when "there is a right to cross-examine witnesses."[125]

But even when litigation is anticipated, there is no work product protection accorded to documents prepared "in the ordinary course of business or for other non-litigation purposes."[126]  Such protection does not arise merely on an "inchoate possibility, or even likely chance of litigation."[127]  The doctrine only justifies protection when the threat of litigation is real and imminent.[128]  This means that "there must be a substantial probability that litigation will ensue at the time the documents were drafted."[129]  Whether documents are prepared in anticipation of litigation ultimately

---

[122]*Id.* at *11.

[123]*Id.* (citation omitted); *accord Pouncil v. Branch Law Firm*, No. 10-1314-JTM, 2011 WL 5025033, at *2 (D. Kan. Oct. 21, 2011).

[124]8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (3d ed. 2010); *see also Natta v. Hogan*, 392 F.2d 686, 693 (10th Cir. 1968) (recognizing that work product is not "limited to preparation for proceedings in a court of record").

[125]*See S. Union Co. v. Sw. Gas Corp.*, 205 F.R.D. 542, 549 (D. Ariz. 2002).

[126]*Ledgin v. Blue Cross & Blue Shield*, 166 F.R.D. 496, 498 (D. Kan. 1996).

[127]*See id.*

[128]*Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *9 (D. Kan. Oct. 5, 1995).

[129]*United States Fire Ins. Co.*, 247 F.R.D. at 657.

requires "a case-by-case analysis, considering the unique factual context of the given problem."[130]

In this case Defendant boldly proclaims that "witness statements taken by counsel constitute fact work product."[131]  But the unpublished opinion upon which it relies does not make so broad a proclamation.  The Court instead found that the witness statements in that case were fact work product, because they were taken by counsel immediately after the filing of the case.[132]  Defendant misconstrues *Jackson* – the case does not alter the requirements for work product.  Labeling or characterizing a document as a witness statement does not magically confirm upon it the character of work product.[133]  Whatever the label, the document must be prepared in anticipation of litigation to enjoy work product protection.

Defendant does not otherwise support its assertion of work product, except to refer to a

---

[130]*Id.* at 659 (citation omitted).

[131]ECF No. 118 at 7.

[132]*See Jackson v. Coach, Inc.*, No. 07-2128-JTM-DWB, unpub. op. at 3 (D. Kan. Apr. 4, 2008) (found at ECF No. 118-2).

[133]Plaintiff, on the other hand, focuses on the fact that the alleged protected documents are witness declarations.  *See* ECF No. 99 at 13-15; ECF No. 124 at 5-6.  He relies on non-binding precedent (*Murphy v. Kmart Corp.*, 259 F.R.D. 421, 429 (D.S.D. 2009), which in turn relies on other non-binding precedent) for the proposition that formal, signed witness declarations or affidavits cannot constitute work product.  Part of the rationale in *Murphy* is predicated on an erroneous view that work product protection "only extends to documents prepared in anticipation of litigation which set forth the attorney's theory of the case and [their] litigation strategy."  *See* 259 F.R.D. at 426-27 (internal quotation marks omitted and citing *Jamal & Kamal*, 2006 WL 2690226, at *2).  As already discussed, *Jamal & Kamal* misquotes a Supreme Court case for the cited proposition.  The court in *Murphy*, furthermore, was "not persuaded that the affidavits are opinion work product material" and found that the requesting party had shown a substantial need for the affidavits, "if the affidavits constitute ordinary or fact work product."  *See* 259 F.R.D. at 431-32.  This analysis shows that the court was most concerned with whether the affidavits were opinion work product, not work product in general.  *See id.*  On the information before it, this Court is not convinced that formal witness declarations are automatically excluded from work product protection.  Plaintiff's proposition is unpersuasive and appears contrary to the practice in this district to consider work product protection on a case-by-case basis.

declaration of its attorney.[134]   Defense counsel thus avers that (1) he has represented the City since late June 2008 in relation to Plaintiff's grievance filed June 4, 2008, his administrative charge of discrimination filed August 15, 2008, with the Kansas Human Rights Commission, and this lawsuit; (2) his law firm was initially "hired to represent the City in relation to Plaintiff's administrative proceeding and grievance;" (3) the declarations of Baugher were executed on December 5, 2008, and February 19, 2010; and (4) the seven declarations "are written documents encapsulating [his] firm's interviews with the respective declarants and were created for the purpose of preserving fact work product [and his] firm was acting in its capacity as the City's defense counsel when it interviewed these witnesses and prepared these declarations."[135]

An affidavit by an attorney that sufficiently establishes all elements of work product can indeed suffice to carry the burden of showing that documents are protected from discovery as work product.[136]   But the averments of counsel in this case appear insufficient, standing alone.   Unlike the attorney affidavit submitted in *McBride*, defense counsel here does not aver that he took statements from witnesses "while the litigation was pending."   Except for Baugher, the averments fail to indicate when the statements were executed.   That silence makes it difficult beyond speculation to determine if they were prepared in reasonable anticipation of litigation or, rather, at an earlier time when defendant was investigating the grievance and trying to resolve it peaceably without litigation. As exhibited in *McBride*, it is easy to conclude that a witness statement is prepared in anticipation

---

[134]*See* ECF No. 118 at 7-9 (discussing work product and the declarations).   In its brief opposing the motion to compel, Defendant does not even state that the declarations were prepared in anticipation of litigation.   *See id.*

[135]Decl. Galdean ¶¶ 2-7 (ECF No. 118-1).

[136]*See McBride v. Medicalodges, Inc.*, Nos. 06-2535-JWL, 06-2536-JWL, 06-2538-JWL, 2008 WL 2157114, at *1 (D. Kan. May 22, 2008).

of litigation when the attorney for one of the parties takes the statement during the pendency of the action.  It is another matter altogether to conclude from the limited facts provided by Defendant that its attorney prepared each of the seven declarations at issue in this case in anticipation of litigation, i.e. when litigation was imminent and not merely a possibility.

Defendant retained outside counsel in June 2008 after Plaintiff filed his grievance.  But merely retaining counsel does not make documents thereafter prepared by counsel protectable under the work product doctrine.[137]  The grievance procedure, furthermore, provides a means for hearing grievances "through a less formal administrative proceeding."[138]  And counsel repeatedly informed Plaintiff that the internal grievance process did not permit representation for him unless his grievance proceeded to a Mediation Committee.[139]  Although Plaintiff would have a right to counsel at that point in the process, the mediation hearing merely provided an opportunity for "all concerned parties . . . to present their respective side of the grievance together with any pertinent evidence or witnesses as deemed relevant by the Committee."[140]  Defendant has not shown the grievance process to be anything more than an internal business practice to resolve a difference internally and avoid litigation.  It does not appear to be a proceeding in which witnesses were subject to cross-examination.  Nor does the convening of a Mediation Committee suggest that the grievance has become so adversarial that litigation must be imminent.  To the contrary, it just as readily suggests that the parties are still trying to conciliate their difference and avoid litigation.  The Court assumes that the

---

[137]*See Disidore v. Mail Contractors of Am., Inc.*, 196 F.R.D. 410, 414 (D. Kan. 2000).

[138]*See* ECF No. 93-7.

[139]*See* ECF No. 124-3 (letters between counsel).

[140]*See* ECF No. 93-7 (General Policy Grievance Procedure).

purpose of a mediation committee is to mediate, not to adjudicate.  Defendant has not carried its

burden to show that it was reasonably anticipating litigation merely because Plaintiff was pursuing

a grievance through this internal and relatively informal process.

Plaintiff also filed an administrative charge of discrimination with the Human Rights

Commission in August 2008.  While such a charge may provide justification for "believing litigation

to be imminent," that justification "does not transform every document thereafter prepared by the

attorney into work product."[141]  Counsel's declaration provides no basis to conclude that Defendant

was reasonably anticipating litigation because of the filing of this charge.  Nor does it indicate

whether the charge led to an administrative hearing that allowed the parties to cross-examine

witnesses.

Other than the filing of the grievance and administrative charge, Defendant provides no basis

for finding that the work product doctrine protects any document prepared before the filing of this

action.  Consequently, Defendant has not shown that it was reasonably anticipating litigation when

its attorney prepared Baugher's declarations on December 5, 2008, and February 19, 2010.  The

dates of those declarations, coupled with the stated reason for their preparation (to preserve fact

work product), simply provides insufficient information to carry Defendant's burden.[142]

The declaration of counsel does not even provide a date for the other declarations sought

through Request 6.[143]  That omission is fatal for the declarations of Charles Blass and Bruce Watson,

---

[141]*Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *11 (D. Kan. Jan. 6, 1998).

[142]For the reasons stated by Plaintiff, these two declarations would be discoverable even if they were protected as work product, because Plaintiff has shown a substantial need for them under Fed. R. Civ. P. 26(b)(3)(A).  *See* ECF No. 124 at 7-8 (setting out substantial need).

[143]*See generally* Decl. Galdean (ECF No. 118-1).

because Defendant does not otherwise provide a date for them.  Defendant has not carried its burden

to show that the two undated declarations prepared by counsel are protected as work product.

Without a date for the declarations, the Court can only assume they were prepared sometime

between June 2008 and June 2011.[144]   That does not suffice to carry Defendant's burden.  As part

of its burden, Defendant must clearly provide the date a withheld document was prepared or some

other showing that it was prepared in anticipation of litigation.  Defendant has done neither with

respect to the two undated declarations.

Despite the failings of its briefing and attorney declaration, Defendant has carried its burden

to show that the declarations of Jacobs, Tapia, and Whyde are protected as work product.  Defendant

of course anticipated litigation after Plaintiff filed this action in December 2010.  The second

amended privilege log provides dates for the declarations of Jacobs, Tapia, and Whyde – all of which

post-date the filing of this case.[145]  With the additional information from its privilege log, Defendant

has carried its burden to show that these declarations were prepared in anticipation of litigation.  The

nature of the declarations coupled with their date shows an unmistakable nexus between the declara-

tions and this litigation.

For the foregoing reasons, the Court overrules the objection of work product as to the two

declarations by Baugher and the undated ones.  It sustains the objections as to the declarations of

Jacobs, Tapia and Whyde.  Because Plaintiff has made no attempt to show a substantial need for

---

[144]Defendant has only clearly shown that counsel prepared the declarations sometime after
it hired his firm in June 2008.  In conjunction with the information provided on the second amended
privilege log, it is also clear that the declarations were prepared no later than the date shown on the
log, or with respect to the two undated declarations, the date the declarations first appeared on a
privilege log – June 1, 2011.  *See* ECF No. 99-2 (Ex. E).

[145]*See* ECF No. 99-3 (Ex. M).

those three declarations under Fed. R. Civ. P. 26(b)(3)(A), the Court finds them protected as work product.  Defendant has no duty to produce them.  As the Court has sustained other objections, Defendant also has no duty to produce any documents listed on its privilege log that are only responsive to Request 5.

### E.  Remedies Sought Through Motions to Compel

By his first motion Plaintiff seeks to compel Defendant to produce documents responsive to his First RFP that were withheld from production and later identified on its privilege log.  With respect to declarations of Jacobs, Tapia, and Whyde, the Court has sustained the objections of work product.  It has otherwise either overruled the asserted objections of privilege or work product or deemed them abandoned or waived.  Accordingly, the Court grants the motion, except as to those three declarations and as to Request 5, which the Court found was overly broad and unduly burdensome in its entirety in ruling on the second motion to compel.  Excluding the three protected declarations and documents responsive only to Request 5, to the extent Defendant is withholding responsive documents on grounds of privilege or work product, it shall produce them and provide a supplemental response to indicate that it has produced all such previously withheld documents. It shall also provide another privilege log to sufficiently describe the declarations of Tapia, Jacobs, and Whyde.

By his second motion Plaintiff would compel Defendant to produce all documents responsive to the First RFP that it has withheld based on other objections.  Except for sustaining objections that Requests 4 and 9 are facially overly broad to a limited extent and Request 5 is overly broad and unduly burdensome in its entirety, the Court has either overruled the asserted objections or deemed them abandoned.  Accordingly, the Court will compel Defendant to produce all responsive docu-

ments that have been withheld on the basis of any objection not sustained in this memorandum and order.

In his second motion Plaintiff also seeks an order to compel Defendant to make additional efforts to locate and produce paper documents and ESI responsive to his First RFP and to produce forensic copies of its ESI.  He argues that such an order would properly address insufficient efforts by Defendant to locate and produce responsive documents.[146]  Defendant contends it has reviewed its ESI, produced emails in native format, and provided adequate responses.[147]

In appropriate circumstances, courts will entertain a motion to consider whether adequate efforts have been made to respond to requests for production.[148]  In doing so, it may "conduct an independent inquiry" or when the movant has shown that efforts to search for responsive documents are "highly suspect," it may simply order a deposition under Fed. R. Civ. P. 30(b)(6) at the offending party's expense.[149]

In this case, Plaintiff has already conducted a Rule 30(b)(6) deposition to inquire about the efforts of Defendant to search for responsive documents and ESI.  Defendant subsequently identified an expert witness for forensic examination of Baugher's original computer and devices.  Plaintiff also deposed that expert.  Because Plaintiff has already pursued a Rule 30(b)(6) deposition, the Court will independently determine the sufficiency of the search efforts of Defendant.

Plaintiff claims that production by Defendant on May 11, 2011, consisted of "only limited

---

[146]ECF No. 104 at 26-28.

[147]ECF No. 120 at 7.

[148]*Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 WL 3146349, at *1-7 (D. Kan. Oct. 31, 2006).

[149]*See id.* at *2.

e-mail correspondence related to the 2008 grievance procedure, none of which were in native format, and all of which appear to have come from its counsel's copy of those communications, not its own."[150]  Although Defendant asserts that it "has produced over 6,700 pages of documents responsive to Plaintiff's discovery requests," it does not identify when these pages were produced.[151]  One of its attorneys declares that fifteen emails were produced "in .pdf format on May 11, 2011."[152]  The attorney also declares that, at some unspecified time, she conducted word searches on email files that were stored on Defendant's network – finding eighty-seven emails that were responsive to Plaintiff's requests and were produced "on a disk in .pst (native) format on June 10, 2011.[153]  A different attorney declares that the search for responsive ESI occurred after May 11, 2011, "by searching a mirror image copy of the City's hard drive."[154]

Although information contained on Baugher's two computers appears highly relevant to this litigation, neither attorney specifically identifies any search for responsive documents from those computers.  Metzinger, the Rule 30(b)(6) deponent, testified that Baugher's original computer was sent to Digital Mountain in May 2009 and that inquiries about searches done on that computer should be addressed to that entity.[155]  Metzinger also testified that he was the "individual IT staff"

---

[150]ECF No. 104 at 5-6.

[151]ECF No. 120 at 1.

[152]Decl. Hertzler (ECF 120-2) ¶ 5.

[153]*Id.* ¶¶ 2, 4-5.

[154]Decl. Galdean (ECF No. 118-1) ¶ 11.  "A 'mirror image' is generally described as 'a forensic duplicate, which replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive.'"  *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006).

[155]Tr. Dep. Metzinger at 36-38 and 44.

for Defendant, that he had conducted no search for responsive documents on the replacement computer, and that he knew of no such search.[156]  The search by Defendant for paper documents was apparently limited to the files of the HR Manager.[157]  The report of the expert, Calvin Weeks, shows that he conducted searches before Plaintiff served his requests for production and after Defendant responded.[158]

Given the above information, the Court finds that Defendant had indeed made insufficient efforts to locate and produce responsive documents when it responded to the First RFP on May 11, 2011.  Defendant urges the Court to deny the request to compel it to make additional efforts to locate and produce responsive documents based on its objections to the requests.  But even if a party has a valid objection to a request for production, the party has a duty to respond to the extent the request is not objectionable.[159]  Consequently, even though the Court has sustained some of the objections to a limited extent, their assertion by Defendant did not end its duty to locate and produce responsive documents to the extent the requests were not objectionable.  After reviewing the eleven requests for production, the Court finds none of them so overly broad that Defendant would be excused from conducting a typical search for responsive documents.

Defendant next urges the Court to deny the requested remedy, because it has reviewed its ESI

---

[156] *Id.* at 42-43.

[157] *See id.* at 72.

[158] *See* Expert Report at 1-2 (showing searches in late March 2011, and on May 17, 2011). Defendant concedes that Weeks' initial search was "extraordinarily limited."  *See* ECF No. 120 at 7 n.3.  It further concedes that the second search was limited to only locating "relevant MS WORD-format job descriptions."  *See id.* at 3.

[159] *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 666 (D. Kan. 1999) (relying on Fed. R. Civ. P. 34(b)).

and produced emails in native format.[160]  It contends that its attorney "searched the City's ESI to locate and produce all responsive ESI."[161]  But the supporting declaration by the attorney merely shows that she conducted word searches on email files "stored on the network of the City."[162]  Such search is insufficient, when responsive ESI could be found on the personal hard drives of computers used by employees of the City.  That the search by the attorney uncovered eighty-seven emails that were produced in native format does not necessarily prove the search sufficient.  Defendant recognizes that its search did not uncover two emails identified by Plaintiff in its supporting memorandum,[163] but offers no explanation why it failed to locate them.[164]  Instead it blames Plaintiff for not proposing additional search terms that "might yield additional relevant documents."[165]

Before responding to the First RFP, Defendant failed to conduct a reasonable search.  The objections asserted against the requests provide no excuse for this insufficiency.  Its subsequent searches for responsive documents likewise appear insufficient.  The substantial record before the Court reveals halfhearted and ineffective efforts to search for responsive documents.  Nothing indicates that Defendant searched the computers used by Baugher for responsive documents.  Given his primary role in the events leading to this litigation, the failure to search his computers is inexcusable

---

[160]ECF No. 120 at 7.

[161]*Id.*

[162]*See* ECF No. 120-2 ¶ 2.

[163]*See* ECF No. 104 at 6 n.1 (identifying unproduced email dated Jan. 5, 2009) and 35-36 (identifying another unproduced email).

[164]*See* ECF No. 120 at 7.

[165]*Id.*

and inexplicable.[166]  To remedy such discovery transgressions, the Court may order production of a mirror image of the relevant hard drives.[167]

While production of such mirror images is permissible in appropriate circumstances,[168] Fed. R. Civ. P. 34(a) creates no "routine right of direct access to a party's electronic information system."[169]  Courts remain cautious about "requests for inspection or requests for forensic or mirror imaging of computers", but many courts now consider such requests "to be neither routine nor extraordinary."[170]  Several courts have "compelled production based upon discrepancies or incon-sistencies in a response to a discovery request or the responding party's unwillingness or failure to produce relevant information."[171]  When production is allowed, the Court "should guard against undue intrusiveness resulting from inspecting or testing such systems."[172]

In light of the insufficient efforts to locate and produce documents and ESI responsive to the

---

[166]*See Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 WL 3146349, at *2 (D. Kan. Oct. 31, 2006).

[167]*See id.* at *6-7.

[168]*See id.*; *White v. Graceland Coll. Ctr. for Prof'l  Dev. & Lifelong Learning, Inc.*, No. 07-2319-CM, 2009 WL 722056, at *7-8 (D. Kan. Mar. 18, 2009); *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3-5 (D. Kan. Mar. 24, 2006).

[169]Fed. R. Civ. P. 34(a) advisory committee notes (2006 amend.).  Prior to the 2006 amendments to the Federal Rules of Civil Procedure, the Tenth Circuit characterized "a physical inspection" of a party's hard drives as "a drastic discovery measure."  *See McCurdy Group v. American Biomedical Group, Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001).  The continued viability of that characterization is doubtful in light of the 2006 amendments which directly address production of electronically stored information.  In any event, the circumstances of this case warrant drastic measures.

[170]*See White*, 2009 WL 722056, at *7.

[171]*See id.* (listing cases).

[172]Fed. R. Civ. P. 34(a) advisory committee notes (2006 amend.).

First RFP, the Court orders Defendant to complete the following discovery:  (1) Defendant shall fulfill its duty to identify each individual who is likely to have documents responsive to the First RFP, conduct a sufficient search for paper documents from them, and provide a supplemental response to the First RFP which indicates that it has done so.  (2) Defendant shall produce at its expense a mirror image of Baugher's second computer and the computer items sent to Digital Mountain for imaging and preservation.[173]  (3) Defendant shall review its network files, emails, and local hard drives for all individuals who are likely to have responsive documents, including Baugher, Steve Archer, Marla McFarland, Douglas Russell, Tapia, Jacobs, and Bartlett.  Because Defendant is only required to produce a forensic copy of the identified computer items, the Court sees no risk of spoliation.

To facilitate the production of the mirror images, the Court orders counsel for the parties, using their computer experts, to confer regarding the best procedure for the production.[174]  After conferring, the parties shall agree to a set of procedures or protocols for Plaintiff or his expert to inspect the mirror images, and if necessary, file the protocols in this case.  Any such procedure should be designed to preserve claims of attorney-client privilege and protect the confidentiality of personal information located on the hard drives that is not related to the claims and defenses or the subject matter of the present case.  To the extent necessary, the parties should also consider an agreed, proposed protective order that addresses the confidentiality of such personal information.

Lastly, Plaintiff seeks sanctions in his motions to compel.  The Court has partially granted

---

[173]Weeks has forensic copies of the devices sent to Digital Mountain stored on his network. *See* Tr. Dep. Weeks at 21, 52-53, and 230.

[174]*Cf. White*, 2009 WL 722056, at *8 (ordering a similar conferral process instead of actual production of mirror images).

and partially denied each motion.  Such mixed disposition invokes consideration of Fed. R. Civ. P. 37(a)(5)(C), which permits the Court to "apportion the reasonable expenses for the motion." Although Defendant has engaged in questionable and insufficient discovery searches, the Court finds no need to shift expenses.  The Court has denied some of its claims of privilege and work product and has ordered it to produce mirror images of some of its computer items.  Under the circumstances the Court will require no further sanctions or fee-shifting at this time.

## IV.    MOTION FOR PROTECTIVE ORDER AGAINST SUBPOENA

Pursuant to Fed. R. Civ. P. 26(c), Defendant moves  (1) to prohibit production of documents and things in response to the subpoena issued to non-party Calvin Weeks and (2) to stay his deposition.[175]  The subpoena directed Weeks to produce:  (1) computer referenced in Exhibit B of his report; (2) hard drive referenced in that exhibit; (3) "[a]ny other electronic storage media" received from Defendant; (4) all hardware or software tools utilized in any search or forensic evaluation of items listed in 1, 2, or 3; and (5) "all documents and things, including, but not limited to, e-mails, electronic files, notes, correspondence, reports, memoranda, print-screen reports, video, and/or audio recordings, relating to the review and forensic examination of the devices outlined in Exhibit B" of his report.[176]

A party may compel a nonparty "to produce documents and tangible things or to permit an inspection" as provided in Fed. R. Civ. P. 45.[177]  Rule 45(a)(1)(A)(iii) specifically provides that a subpoena may command a person to "attend and testify; produce designated documents, electron-

---

[175]Because the deposition has already occurred, the Court finds the motion moot to the extent Defendant seeks to stay it.

[176]*See* Subpoena (ECF No. 77-2).

[177]*See* Fed. R. Civ. P. 34(c).

41

ically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises."[178]

Rule 26(c)(1) of the Federal Rules of Civil Procedure provides a mechanism for parties and "any person from whom discovery is sought" to seek a protective order from the Court.  Under this rule, courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  The movant must show good cause for a protective order.[179]  Carrying that burden requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[180]

Courts have broad discretion to decide when a protective order is warranted, and if warranted, the scope of protection required given the situation at hand.[181]  Through Rule 26(c), the courts have "substantial latitude to fashion" an appropriate protective order after fairly weighing "the competing needs and interests of the parties affected by discovery."[182]  Despite the broad grant of discretion given the courts, a protective order is only warranted when the movant demonstrates that protection is necessary under a specific category set out in Rule 26(c).[183]  Parties or persons moving for protection under Rule 26(c) must show that they will suffer "annoyance, embarrassment,

---

[178]A subpoena may include these various commands in combination or separately.  *See* Fed. R. Civ. P. 45(a)(1)(C).

[179]*Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[180]*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

[181]*Layne Christensen Co.*, 271 F.R.D. at 244.

[182]*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

[183]*Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003).

oppression, or undue burden or expense" in the absence of a protective order.[184]

Defendant seeks to prohibit production of documents and things in response to a subpoena issued to its expert, Calvin Weeks. It contends that a protective order should be granted to prohibit inquiry into matters clearly beyond the scope of appropriate discovery. It makes several supporting arguments. In light of its findings and rulings on the motions to compel, the Court finds that requiring any additional response to the subpoena will create an undue expense for Defendant.

To determine whether a subpoena imposes an undue burden or expense, the courts examine a number of factors on a case-by-case basis, including relevance of requested items, the need for the items, the breadth of the request, and burden or expense imposed.[185] The courts must "balance the need for discovery against the burden [or expense] imposed on the person ordered to produce [items], and the status of a person as a non-party is a factor that weighs against disclosure."[186]

Here Plaintiff issued a subpoena to determine the adequacy of the searches and responses by Defendant to the First RFP.[187] The Court has already found those searches and responses inadequate. It has ordered Defendant to fulfill its duty to provide further discovery. It does not find that further deposition and production under Fed. R. Civ. P. 45 will add anything of consequence to this action. The Court has ordered Defendant to produce mirror images of computer items sent to Digital

---

[184]*See id.*; *Beach v. City of Olathe,* Nos. 99-2210-GTV, 99-2217-GTV, 2001 WL 1098032, at *1 (D. Kan. Sept. 17, 2001); *Epling v. UCB Films, Inc.*, Nos. 98-4226-RDR, 98-4227-RDR, 2000 WL 1466216, at *2 (D. Kan. Aug. 7, 2000), *upheld on review in pertinent part*, 2001 WL 584355 (D. Kan. Apr. 2, 2001).

[185]*Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (discussing undue burden).

[186]*Id.* at 663.

[187]*See* ECF No. 96 at 20.

Mountain for imaging and preservation, i.e., items referenced in Categories 1, 2, and 3 of the subpoena.  Additional production of those items from the expert would serve no purpose.  It would unnecessarily increase expense.  Although the deponent is a non-party, Defendant would incur some expense in producing the requested documents and items.[188]  Given the findings and rulings on the motions to compel, the need for further production under Rule 45 is outweighed by any added expense.  Accordingly, the Court finds that the subpoena subjects Defendant to undue expense.  For good cause shown, the Court finds it unnecessary to pursue the production requested through the Fed. R. Civ. P. 45 subpoena.  It thus grants Defendant's Motion for Protective Order to the extent it is not mooted by the production Defendant is to provide, as otherwise directed.  Each party shall be responsible for his or its own costs.

## V.  Conclusion

For the reasons stated, the Court finds Defendant's Motion for Protective Order (ECF No. 76) moot in part and grants it to the extent it seeks to prohibit requested production on grounds of undue expense; grants in part and denies in part Plaintiff's Motion to Compel Production of Items Identified on Defendant's Privilege Log (ECF No. 98); and grants in part and denies in part Plaintiff's Motion to Compel Production of Documents and for Expenses (ECF No. 103).  Within thirty days of the date of this order, Defendant shall (1) produce all documents responsive to Requests 1, 2, 3, 6, 7, 8, 10, and 11 of the First Requests for Production of Documents, except for the three declarations that are protected as work product; (2) produce all documents responsive to Requests

---

[188]Although much of the expense and burden caused by the subpoena may be borne by the expert, rather than Defendant personally, at least some of the expense would fall on Defendant, because the non-party deponent is its retained expert.  Furthermore, items responsive to Categories 1, 2, and 3 are now in Defendant's possession, which means Defendant would incur expenses, if the Court denied the motion for protective order.  Defendant, furthermore, would incur additional personal expenses in attending the deposition should further testimony be allowed.

4 and 9 as limited in this memorandum and order;  (3) provide a supplemental response to indicate that it has produced all previously withheld documents not subject to any sustained objection; and (4) provide a privilege log that sufficiently describes the declarations of Tapia, Jacobs, and Whyde. Given the insufficient efforts to locate and produce documents and electronically stored information, the Court also orders Defendant to (1) identify each individual who is likely to have documents responsive to the First Requests for Production of Documents, conduct a sufficient search for paper documents from them, and indicate in its supplemental response that it has done so; (2) produce at its expense a mirror image of Gary Baugher's second computer and the computer items sent to Digital Mountain for imaging and preservation; and (3) review its network files, emails, and local hard drives for all individuals who are likely to have responsive documents as set out more fully in this memorandum and order.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 24th day of February, 2012.


s/Gerald l. Rushfelt
Gerald L. Rushfelt
U.S. Magistrate Judge