IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TRENCE ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-1431-JAR |
| ) | |
| CITY OF ARKANSAS CITY, ) | |
| KANSAS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an employment discrimination case in which Plaintiff alleges federal claims of race discrimination, due process violations, and a state law claim under the Kansas Wage Payment Act. Before the Court is Plaintiff's Renewed Motion to Compel and for Monetary Sanctions (Doc. 209), seeking production of an alleged tape recording and certain emails and attachments (the "Archer-Paton emails") that Plaintiff maintains the City improperly withheld or destroyed. The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court denies the balance of Plaintiff's motion to compel. There is no evidence that Defendant possesses the tape recording and several of the e-mails at issue are not responsive to the First Request for Production. But because Defendant concedes that Plaintiff's Exhibit B was not produced and was most likely deleted, the Court will grant the motion to compel to the extent it seeks an order compelling Defendant to explain to Plaintiff the circumstances of the deletion. The Court declines to impose sanctions.

**I.     Background**

The protracted history and nature of the discovery issues in this case are set forth in detail in Judge Rushfelt's February 24, 2012 Memorandum and Order ruling on several of the parties' discovery motions, including objections by the City to Plaintiff's First Request for Production of Documents ("FRP") served on April 11, 2011.  These requests included the following:

> REQUEST TO PRODUCE NO. 1:
> Any and all documents related to Robinson's employment with the City of Arkansas City, Kansas, including, but not limited to, all personnel files, electronic files, e-mails, and correspondence from January 1, 2006 to the present.
>
> REQUEST TO PRODUCE NO. 2:
> Any and all documents and things relating to communications by and between the City and Mark Patton, Judy Reedy, Charles Jennings, or any combination thereof concerning any aspect of the December 8, 2008 and December 30, 2008 hearings before the Mediation Committee regarding Robinson or any aspect of the subsequent written decision by the Mediation Committee.
>
> REQUEST TO PRODUCE NO. 3:
> Any and all documents maintained by any manager and/or supervisor, including human resources, concerning Robinson, including, but not limited to, e-mails, payroll records, calendars, notes, memoranda, claim files, performance evaluations, disciplinary documents, safety reports, complaints filed by Robinson, pay grade documents, and correspondence from January 1, 2006 to the present.
>
> REQUEST TO PRODUCE NO. 6:
> Copies of any notes or statements taken during interviews of any individual, whether such documents are in documentary form, or recorded via audio or video means, which were taken by you or any agent working on your behalf that relate to any allegation at issue in the Complaint.
>
> REQUEST TO PRODUCE NO. 10:
> Any and all files, documents, memoranda, notes, or e-mails created or revised since January 1, 2006, discussing Robinson.

The term "documents" is defined to include tape recordings.

Judge Rushfelt found that the City made insufficient efforts to locate and produce documents responsive to the FRP when it initially responded on May 11, 2011. Due to these "half-hearted efforts," Judge Rushfelt ordered the following:

> (1) Defendant shall fulfill its duty to identify each individual who is likely to have documents responsive to the First RFP, conduct a sufficient search for paper documents from them, and provide a supplemental response to the First RFP which indicates that it has done so. (2) Defendant shall produce at its expense a mirror image of Baugher's second computer and the computer items sent to Digital Mountain for imaging and preservation. (3) Defendant shall review its network files, emails, and local hard drives for all individuals who are likely to have responsive documents, including Baugher, Steve Archer, Marla McFarland, Douglas Russell, Tapia, Jacobs, and Bartlett. Because Defendant is only required to produce a forensic copy of the identified computer items, the Court sees no risk of spoliation.
> To facilitate the production of the mirror images, the Court orders counsel for the parties, using their computer experts, to confer regarding the best procedure for the production. After conferring, the parties shall agree to a set of procedures or protocols for Plaintiff or his expert to inspect the mirror images, and if necessary, file the protocols in this case. Any such procedure
> should be designed to preserve claims of attorney-client privilege and protect the confidentiality of personal information located on the hard drives that is not related to the claims and defenses or the subject matter of the present case. To the extent necessary, the parties should also consider an agreed, proposed protective order that addresses the confidentiality of such personal information.[1]

The instant renewed motion to compel argues that the City failed to fulfill its duties under Rules 26 and 34 in responding to the FRP and to Judge Rushfelt's directives. First, Plaintiff argues that the City has withheld a tape recording of a meeting between Plaintiff and Gary Baugher, his supervisor. Second, Plaintiff argues that the City has not produced copies of all communications

---

[1] Doc. 162 at 40 (footnotes omitted).

between City Manager Steve Archer, and Mediation Committee member Mark Paton.

## II. Tape Recording

One of the documents the City produced in response to Judge Rushfelt's Order consists of handwritten notes by Baugher from a meeting he conducted with Plaintiff on June 4, 2008. The top portion of the notes states his intent to tape record the meeting and the lower portion appears to document the meeting itself. He noted that he "called Trence into the conference room . . . . Myself, Trence, and a tape recorder, and proceeded to ask Plaintiff questions about his Grievance." When Plaintiff's counsel asked Defendant's counsel for a copy of the tape recording referenced in this document, Defendant's counsel responded that "[t]he note you reference A00269 only indicates there was a tape recorder in the room. There is no indication the conversation was taped. We have provided what we have. If you want to do an interview of Gary Baugher or a telephonic deposition on this topic let me know."[2]

Plaintiff seeks to compel production of this tape recording, arguing that Defendant's counsel failed to adequately investigate whether the conversation was in fact recorded, and if so, ascertain its location. The City has submitted Baugher's declaration, which states that he did not record the conversation, and other evidence that shows it did an extensive search of all materials responsive to the FRP. Plaintiff does not submit evidence, other than Baugher's notes, that suggest otherwise. Instead, he argues that Baugher lacks credibility and therefore the Court should reject his sworn statement that the meeting was not recorded.

Rule 34 only obligates parties to produce discovery that is within their custody,

---

[2]Doc. 210, Ex. K.

possession, or control.³  Defendant has submitted evidence that the June 4, 2008 meeting was not tape recorded and Plaintiff has failed to controvert this evidence.  Defendant also has submitted evidence that it has searched for documents, including tape recordings, responsive to the FRP.  The Court declines to reject Baugher's declaration based on the testimony of other witnesses that he is not trustworthy.  Plaintiff's motion to compel production of this tape recording is denied.

## III.   Archer-Paton Emails

Plaintiff discovered two emails that include attachments—ex parte communications between City Manager Steve Archer and Committee member Paton—when he subpoenaed documents from Paton during discovery, attached as Exhibits B and C to the motion to compel, as well as an alleged follow up e-mail to Exhibit C with the subject line "Try Again," that was sent on January 6 with an attachment.⁴  Plaintiff now seeks to compel production of the emails between these two individuals in December 2008 and January 2009, including five emails on January 5, 2009, because the City never produced copies of Exhibits B and C, or the "Try Again" email.  After the City endeavored to produce more documents in compliance with Judge Rushfelt's Order, it produced what Plaintiff characterizes as "traces" of unproduced Archer-Paton emails, including Exhibit B.  On June 18, 2012, Defendant's counsel emailed Plaintiff's counsel and conceded that the January 5, 2009 e-mail (Ex. C) was not produced, but contended that the e-mail is not responsive to any of the FRPs because it does not mention Robinson or the grievance committee meeting.  In that same email, Defendant's counsel asked for more information about the other emails Plaintiff claimed had not been produced; there is no

---

³Fed. R. Civ. P. 34; *see Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 307 (D. Kan. 1996).

⁴Plaintiff has discovered a read-receipt e-mail for the "Try Again" email, attached as Exhibit G.

indication that a reply was sent or received.

Plaintiff argues that the City failed to produce Exhibits B and C, the "Try Again" e-mail, and potentially other documents like them that are responsive to the FRPs. According to Plaintiff, since the City produced other Archer emails during the December 2008 and January 2009 time period, the nonproduction of Exhibits B and C must be the result of either an inadequate search protocol or a prior deletion of documents. Plaintiff urges the Court to compel their production or require Defendant to explain their destruction. The City responds that it has produced all responsive documents in its possession, and that to the extent documents no longer exist that are responsive to the FRPs, the City was under no duty to preserve them in December 2008 and January 2009.

### A.  Search Protocol and Responsiveness

Plaintiff first argues that Defendant used "secret" search terms in searching documents responsive to the FRPs after Judge Rushfelt's Order. Based on this lack of transparency, he suggests that emails were not produced that are in fact responsive. But Defendant has submitted a draft of an Agreed Protocol Governing Production of Defendant's Electronic Data that was sent to Defendant's counsel by Plaintiff's counsel on March 5, 2012 in response to Judge Rushfelt's Order.[5] Defendant also attaches an e-mail its counsel sent to Digital Mountain, an e-discovery vendor, with search terms to be used in searching e-mail data that was collected by the City in March 2012. Plaintiff complains that Defendant states it "used search terms derived from the search terms contained in the suggested ESI protocol <u>sent to the City by Plaintiff</u>," questioning the meaning of this representation. The Court does not find Defendant's semantics

---

[5]Doc. 214-2.

to be suspicious or dispositive.  The two search terms documents appear to the Court to be identical and the Court accepts Defendant's representation that these search terms were sent to Digital Mountain and used to search the City's electronic data.  The Court is satisfied that the failure to produce any Archer-Paton emails is not due to inadequate search terms.

Using these search terms, it is clear that the Exhibit B e-mail would have been produced if it existed.  It refers to the Mediation Committee and is sent by Archer to Paton and Jennings.  As to Exhibit C and the "Try Again" e-mail attached as Exhibit G, the City contends that they are not responsive to the FRP 2.  Exhibit B is from Paton to Archer on January 6, 2009, advising Archer that he could not open an attachment Archer had sent the day before in the e-mail chain.  The January 5 e-mail states: "I have this on my desk and try to review it weekly.  Might help when dealing with Charles.  I especially like number 3."[6]  FRP 2 does not request all communications between committee members, but instead contains a temporal and subject matter limitation: "concerning any aspect of the December 8, 2008 and December 30, 2008 hearings before the Mediation Committee regarding Robinson or any aspect of the subsequent written decision by the Mediation Committee."  Plaintiff characterizes Defendant's position that this e-mail is nonresponsive as "brazen." But the Court agrees with Defendant that on its face, the e-mail does not concern the Mediation Committee hearings or its decision.  Exhibit C does not refer to Plaintiff, or the Mediation Committee, or a hearing, or a written decision.  Instead, Plaintiff argues that Defendant should have produced this e-mail based on its context—the fact that it was sent after an attachment was sent from Archer to Paton about "Charles."  The Court agrees that this e-mail is not responsive to FRP 2.

---

[6]Doc. 210, Ex. C.

It is also not clear that the "Try Again" e-mail is responsive to FRP 2. That request did not require production of any communication between Archer and Paton, but only those communications that concern the Mediation Committee hearings or decision. For the same reasons the Exhibit C e-mail was nonresponsive, the Court finds no evidence to suggest the "Try Again" e-mail was responsive to FRP 2.

### B. Deletion

Thus, the only Archer-Paton communication that remains in question is Exhibit B. Defendant concedes in a footnote that "the most obvious answer" for the missing Exhibit B e-mail and attachment is that it was deleted. Plaintiff clarifies in his reply that he does not seek spoliation sanctions; instead, he asks the Court to compel Defendant to explain the circumstances of the email's destruction. Yet the parties spend the bulk of their briefs arguing about whether the City had a duty to preserve documents concerning the grievance process in December 2008 and January 2009. The Court declines to decide an issue not properly before it. Because Defendant concedes that this e-mail was most likely deleted, the Court cannot compel its production. Instead, Defendant shall investigate the circumstances surrounding the deletion of this email—the who, when and why—when other similar emails were produced and when a litigation hold was placed on documents dealing with Plaintiff's access to the grievance procedure.[7] The City shall produce this information to Plaintiff by August 6, 2012.

### IV. Sanctions

Plaintiff's prior motions to compel argued that Defendant's original responses to the FRP were woefully insufficient; the motions were largely granted by Judge Rushfelt. Judge Rushfelt

---

[7] Doc. 215, Ex. P.

made clear in his February 24 Order that Defendant's efforts in responding to the FRP were inadequate and ordered Defendant to review and produce electronic and non-electronic documents responsive to the FRP, resulting in the production of more than 32,000 documents. Judge Rushfelt also ordered the City to produce a mirror image of Baugher's hard drive and ordered Plaintiff to protect any privileged documents in that ESI.  Judge Rushfelt denied Plaintiff's request for sanctions for fee-shifting based on the discovery violations he had identified in the Order.  Plaintiff now claims that he was required to work with a third party vendor and incur over $11,000 in costs associated with reviewing the Defendant's production for responsiveness and relevance.

Defendant concedes that it conducted an "overly broad" search in an effort to comply with Judge Rushfelt's very clear directives.  Plaintiff now complains that Defendant has "dumped" tens of thousands of unreviewed and nonresponsive documents on him.  Given Judge Rushfelt's admonishment in the February 24, 2012 Order, the Court declines to find that Defendant's subsequent production was abusive.  And the e-mail correspondence between counsel suggests that Defendant offered to review and whittle down the production of documents from the computer hard drive at issue.  Subsequent to that exchange, Defendant sent over working files of its documents to help reduce the burden of review on Plaintiff.  Plaintiff prevailed on its last round of motions to compel, convincing Judge Rushfelt to compel production of large categories of documents that had been previously withheld.  On this motion to compel a tape recording and discrete series of emails, Plaintiff has received only nominal relief—one responsive e-mail appears to have been deleted under unknown circumstances.

The Court declines to sanction Defendant for producing too much information and is

satisfied based on Defendant's submissions that it has complied with Judge Rushfelt's Order. To the extent certain documents have not been produced, the Court is satisfied that they do not exist. Having determined that Defendant complied with Judge Rushfelt's Order with the exception of the Exhibit B e-mail, the Court need not determine whether Rule 37 sanctions are warranted. It appears to the Court based on the parties' submissions that Defendant has made a good faith effort to confer with Plaintiff and to comply with Judge Rushfelt's Order and honor its obligations under Rules 26 and 34.

The Court now considers Defendant's motion for summary judgment under advisement and will proceed to turn its attention to the parties' numerous submissions on that motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Renewed Motion to Compel and for Monetary Sanctions (Doc. 209) is **granted in part and denied in part**. Plaintiff's motion to compel the e-mail and attachment labeled as Exhibit B to the motion is granted; Defendant shall investigate the circumstances surrounding the deletion of this e-mail and produce this information to Plaintiff by August 6, 2012. The remainder of Plaintiff's motion is denied.

**IT IS SO ORDERED**.

Dated: July 26, 2012

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE